# Pennsylvania and Northwestern Railroad Company *v.* Harkins, et al., Appellants.

*Surety—Railroads—Consolidation of—Act of May 16, 1861.*

Where one railroad company which had leased another took a bond with sureties, from one of its employees; and, subsequently, the two railroads were consolidated under the act of May 16, 1861, and, under a new name, the same business was continued; *held,* that the sureties were liable for the employee's defalcation after the merger of the two companies.

*Practice—Legal plaintiff—Trial on merits—Amendment.*

In such case the suit against the sureties having been brought in the name of the new company, after trial on the merits it is immaterial whether the suit was properly so brought or not; if the suit should have been in the name of the original obligee to the use of the new company, the defect could be cured by amendment.

Argued April 22, 1892.  Appeal, No. 153, Jan. T., 1892, by defendants F. M. Harkins et al., from judgment of C. P. Clearfield Co., May T., 1891, No. 35, on verdict for plaintiff.  Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Assumpsit against sureties on bond of employee of plaintiff.

The amount of the defalcation of the employee for whom defendants were sureties, was $330.88. On the trial before KREBS, P. J., the question whether, under the evidence, there could be a recovery on the bond against the sureties, was reserved, and a verdict rendered for the plaintiff.

The facts appear by the following opinion by KREBS, P. J., overruling the motion to enter judgment for the defendants n. o. v. and ordering judgment to be entered on the verdict:

"This action is brought upon a bond given by F. M. Harkins, as principal, and the other named defendants as sureties, to the Bell's Gap Railroad Company, and bearing date the 9th day of April, A. D. 1888.

"F. M. Harkins was the appointed passenger and freight agent of the Bell's Gap Railroad Company, at Coalport station, on the line of said company, and this suit is brought on this bond to recover the amount of a defalcation in his accounts with the Pennsylvania and Northwestern Railroad Company.

"The facts involved in a correct solution of the question covered by the reserved points are stated chronologically thus:

"*First.* 'The Bell's Gap Railroad Company' existed by virtue of an act of assembly, approved May 11, A. D. 1871, (P. L. 1871, 737,) and the supplement thereto of the 17 May, 1871, (P. L. 1871, 886,) and of 29th March, 1872, (P. L. 1872, 700,) and under the authority of these several acts, constructed a line of railroad from Bellwood to Irvona.

"*Second.* The Clearfield and Jefferson Railway Company existed under the general statutes of Pennsylvania, authorizing the creation of corporations to build railroads, by its articles of association filed in the office of the secretary of the commonwealth on the 27th day of February, 1885, and letters patent thereupon issued; and constructed its line of road from Irvona, in Clearfield county, to Horatio, near Punxsuawney, in Jefferson county, Pennsylvania.

"*Third.* The Clearfield and Jefferson Railway was leased to the Bell's Gap Railroad Company, under an agreement of lease dated the 18th October, 1886, for the term of ninety-nine years.

"By the terms of this lease, full control of 'the Clearfield and Jefferson Railway' was given to 'Bell's Gap Railroad Company,' subject to the payment of certain moneys, as the

consideration for the lease; nothing contained in the lease, however, is material to the point in issue.

" *Fourth.* F. M. Harkins was appointed the agent of 'the Bell's Gap Railroad Company,' at Coalport station, in Clearfield county, on the 9th day of April, 1888, and as such made and executed with the other defendants as his sureties the following bond, viz.:

" ' Know all men by these presents, that we, F. M. Harkins, James Haines, W. F. Wagner, J. W. Spangle and J. M. Beers, all of Coalport, Clearfield county, state of Pennsylvania, are held and firmly bound unto the Bell's Gap Railroad Company, in the sum of two thousand dollars, lawful money of the United States of America, to be paid to the said Railroad Company, its certain attorney, successors or assigns, to which payment well and truly to be made, we do bind ourselves and each of us, our and each of our heirs, executors and administrators, jointly and severally, firmly by these presents, sealed with our seals and dated this ninth day of April, anno Domini one thousand eight hundred and eighty-eight.

" ' Whereas, the above bounden F. M. Harkins has been appointed an agent of the said Railroad Company, to attend generally to the duties which pertain to or may be assigned to or may devolve upon an agent at Coalport station, and the said F. M. Harkins being required to give bond for the faithful performance of his duties, with security in the sum mentioned in the above obligation, the above named James Haines, W. F. Wagner, J. W. Spangle and J. M. Beers, have agreed to become bound to the said Railroad Company as sureties for the faithful performance by the said F. M. Harkins of the duties hereinafter set forth as freight and passenger agent at Coalport station.

" ' Now, the condition of this obligation is such, that if the above bounden F. M. Harkins shall and do, well and faithfully collect all dues, fees and freight or passage money which may be due and payable to the said Railroad Company, and which it may from time to time be his duty to charge and collect upon passengers or freight, or otherwise howsoever, including all freight money due on freight or property shipped by other railroad, railway, or transportation companies or transporters, and passing on or over the Bell's Gap Railroad or roads leased or operated by the said Railroad Company, and which freight

money the said Railroad Company, may undertake or assume
the collection of, for or on behalf of such railroad, railway, or
transportation companies or transporters, or for which the said
Railroad Company could in any wise be held responsible by
any such railroad, railway, or transportation company or trans-
porter, and shall pay over the whole sum thereof each day,
or whenever required, into the hand of the proper officer of the
said Railroad Company, or to his order, and shall in all respects
attend to and diligently and faithfully perform all the duties as
hereinbefore set forth, and such other duties as may from time
to time be assigned to or devolve upon him as such agent with-
out any fraud or further delay, then the above obligation is to
be void, otherwise to be and remain in full force and virtue.

" ' And it is hereby expressly agreed, that in any action on
this bond, and on any question however or whenever arising or
contested, as to the amount of money received, paid over or due
by the said F. M. Harkins, or chargeable in any way whatever
to the said F. M. Harkins as agent aforesaid, the books and
papers of the said Railroad Company, kept in the office of said
company at Bellwood, or elsewhere, and the instructions of the
proper officers or employees of the said Railroad Company
which may, from time to time, be given, shall be competent and
conclusive evidence of the matters therein contained against
the said F. M. Harkins, agent as aforesaid, and against his
sureties on this bond ; and the authenticity of all such books,
papers, and instructions may be proved by an officer or employee
of the said Railroad Company having knowledge thereof, and
this notwithstanding any interest which such officer or employee
may have as stockholder or otherwise in said Railroad Com-
pany.'

" *Fifth.* On the 21st of October, A. D. 1889, ' the Bell's Gap
Railroad Company ' and the Clearfield and Jefferson Railway
Company, entered into an agreement of consolidation and mer-
ger of their lines of road, under the powers and authority con-
tained in the general statute approved the 16th May, 1861, P.
L. 1861, page 702.

" The material parts of this agreement of consolidation and
merger are contained in the following extracted therefrom, viz.:

" ' Now, therefore, this agreement witnesseth, that the said the
Bell's Gap Railroad Company and the said the Clearfield and

Jefferson Railway Company, hereunto subscribed, do hereby, in consideration of the premises, and of the covenants and agreements herein expressed, to be done, kept and performed, agree to the consolidation and merger of their capital stock, franchises and property of whatsoever kind or character, as follows, that is to say: That the capital stock, rights, franchises, powers, privileges and property of the said the Clearfield and Jefferson Railway Company shall be, and from the first day of January, A. D. 1890, (a copy of this agreement, with the proper certificates, as required by law, having been first filed in the office of the secretary of the commonwealth), transferred to and vested in the said the Bell's Gap Railroad Company, and thereupon this agreement shall be deemed and taken to be the act of consolidation of the corporations, parties hereto; the terms and conditions of such consolidation or merger as agreed upon between them, the parties hereto, being as follow, ' that is to say : '

" ' *First.* The name, style and title of the said consolidated corporation shall be the Pennsylvania and Northwestern Railroad Company.

" ' *Second.* The board of directors of the said consolidated corporation shall consist of a president and six directors.

" ' The other officers of the said consolidated corporation shall be a vice president, a treasurer and a secretary, and until the third Wednesday of February, 1890, (when and annually thereafter, on the third Wednesday of February, unless the same be duly designated a legal holiday or otherwise legally altered, an election by ballot shall be held for president and six directors, to serve for one year or until their successors are duly elected) the organization shall be as follows : President. . . .

" ' In the event of the third Wednesday of February being designated a legal holiday, the election for a president and six directors shall be held on the following day not a legal holiday."

" ' *Third.* That the capital stock of the said consolidated corporation shall consist of 33,200 shares of the par value of $50 each, or aggregating $1,660,000 par value, and that the said consolidated corporation shall have and retain the power to increase the said capital stock at any time, or from time to time as provided by law.

" ' *Fourth.* That in lieu of, or in exchange for, the outstanding capital stock of the Bell's Gap Railroad Company and of the Clearfield and Jefferson Railway Company, parties hereto, there shall be issued to the holders thereof, upon the surrender of their certificates, to the holders of stock of the Clearfield and Jefferson Railway Company, an equal amount, share for share, of the capital stock of the new or consolidated corporation, and to the holders of the stock of the Bell's Gap Railroad Company one and one fifth shares of the stock of the new or consolidated corporation for every share held by them in the said Bell's Gap Railroad Company, and the certificates of stock of the said two constituent companies shall be delivered up and canceled. The excess in the amount of the capital stock of said consolidated corporation over the aggregate capital stock of said constituent companies, being necessary to equalize the interest of the said Bell's Gap Railroad Company, party hereto, in said consolidated corporation as set forth in the affidavit hereto appended, of the president and principal engineer of said Bell's Gap Railroad Company, that the actual cash value of the corporate property and franchises of the said Bell's Gap Railroad Company is equal to the amount of stock and bonds herein provided to be issued to the stockholders and bondholders of the said Bell's Gap Railroad Company.

" ' *Fifth.* That under and subject to four certain mortgages heretofore created for the securing the issue of $1,533,500 of bonds, to wit : . . . .

" ' Upon the consummation of this consolidation and merger the said consolidated corporation shall forthwith create a general mortgage (in a form submitted to the stockholders of the said constituent companies) in the sum of $2,500,000 upon the property and franchises of the new corporation hereby created, for the securing of bonds of like amount, said bonds to be issued by the board of directors from time to time in amount not exceeding at the time of said issue the capital stock paid up, and to replace such prior mortgage bonds as may be exchanged by the holders thereof or retired and canceled under the sinking fund clause of said mortgage. Such issue of new general mortgage bonds to be made from time to time as to the board of directors of the said consolidated corporation shall seem meet, and without requiring as a condition precedent to the issuance

and sale of the said bonds any further or other authority of the stockholders of the said consolidated corporation than is herein and hereby given.

" 'And it is further expressly understood and agreed that the lien of the said prior mortgages hereinabove recited and mentioned shall remain as heretofore upon the property and franchises only in the said mortgages described and mentioned respectively, and nothing in this consolidation and merger contained shall in any way be construed to extend the lien of the said mortgages, or any of them, over corporate property and franchises of the consolidated corporation not specifically covered by the terms of the said mortgages, that is to say, the said mortgages created by the said Bell's Gap Railroad Company shall remain as a lien upon the property and franchises heretofore of the Bell's Gap Railroad Company, and the said mortgage created by the said the Clearfield and Jefferson Railway Company shall remain only upon the property and franchises of the said the Clearfield and Jefferson Railway Company.

" ' *Sixth.* Upon the consummation of this act and agreement of consolidation and merger, all and singular the rights, privileges and franchises of each of the said corporations, parties hereto, and all the property, real, personal and mixed, and all the debts due on whatever account, as well as all stock subscriptions and other things in action belonging to each of the said corporations, parties hereto, shall be taken and deemed to be transferred to and vested in the said new or consolidated corporation, without further act or deed; and all property, rights of way, and all and every other interest shall be as effectually the property of the said new or consolidated corporation as they were of the said corporations, parties hereto; and the title to real estate, either by deed or otherwise, under the laws of the said commonwealth of Pennsylvania, vested in either of the said corporations, parties hereto, shall not be deemed to revert or be in any way impaired by reason of this act and agreement of consolidation and merger. And all the rights of creditors and all liens upon the property of either of the said corporations, parties hereto, may be deemed to continue in existence so far as may be necessary to preserve the same ; and except as is herein otherwise provided, all debts and liabilities and duties of either of the said corporations, parties

hereto, shall henceforth attach to the said new or consolidated corporation and be enforced against it to the same extent as if the said debts, liabilities and duties had been incurred or contracted by it.

" ' *Seventh.* And the said consolidated corporation shall possess and enjoy all the corporate rights, privileges, immunities and franchises vested in or pertaining to both or either of the corporations, parties hereto, including especially section second of the act of March 29th, A. D. 1872, entitled, " A further supplement to an act entitled ' An Act to incorporate the Bell's Gap Railroad Company,' providing that the said company shall be governed in its charges for toll and transportation by the eighteenth section of the act of 1849, except the second proviso thereof."

" ' In witness whereof, the said the Bell's Gap Railroad Company and the Clearfield and Jefferson Railway Company have each caused their common or corporate seal to be hereto affixed, duly attested, dated the day and year first above written.'

" This agreement was accompanied by a certificate that more than two thirds of the stockholders had voted in favor of the consolidation and merger at a meeting of stockholders held to vote on that question, when filed with the secretary of the commonwealth.

" *Sixth.* The defalcation of Harkins occurred in September and October, 1890, after the consolidation and merger agreement had been fully consummated in the name of ' the Pennsylvania and Northwestern Railroad.'

" *Seventh.* The testimony on the part of the plaintiff, and not contradicted by the defendants or impugned in any way, shows that the liability of the sureties by the act of consolidation or merger, so far as the business of the railroad was effected thereby, was neither increased nor diminished, no new duties were cast upon the agent that he did not agree to perform at the time when the bond was signed, and no change in the business of the railroads grew out of the consolidation and merger, other than the natural increase, as the country was developed, and such as the sureties must have contemplated when they signed the bond.

" Under these facts, the sureties denied their liability on the bond of the 9th April, 1888, given to the Bell's Gap Railroad

Company, and presented the following points the answer to which constitutes the question reserved, namely:

"' *First.* The bond in question was given to 'the Bell's Gap Railroad Company' and not to said company, its successors or 'assigns.' Whatever rights the plaintiffs have they acquire as assignees of the Bell's Gap Company, and it could assign no greater interest than it had in this bond on the 1st day of January, A. D. 1890, upon which date all the property of the Bell's Gap Company, including this bond, became the property of the plaintiff. There being nothing due on the bond on the date above mentioned, all defalcations being after that date and while Harkins was in the employ of the plaintiff, there is no liability of the sureties to the present plaintiff.

"' *Second.* F. M. Harkins has fully complied with every condition of said bond, and there can be no recovery in this case against the sureties.

"' *Third.* The bond in question was given on the 9th day of April, 1888, to the 'Bell's Gap Railroad Company,' conditioned for the faithful performance, by F. M. Harkins, of all the duties that might devolve upon him as such agent while in said employ, (of the Bell's Gap Company.) The Bell's Gap Company ceased to exist on the 1st day of January, A. D. 1890, as alleged by the plaintiff, and a new corporation was formed which appears as plaintiff in this suit. Harkins was in the employ of the plaintiff after January 1, 1890, and all defalcations occurred while in the employ of the plaintiff, as set forth in the statement in this case, consequently the plaintiff cannot recover.'

" To state the proposition more clearly and with less verbiage, the sureties deny that the agreement of consolidation and merger under the act of 1861, supra, passed to the Pennsylvania and Northwestern Railroad Company this bond of the 9th of April, 1888, so as to make them liable for a default in its condition by the principal after the act of consolidation and merger became operative.

" Whether or not this action can be maintained depends upon the correct determination of the following questions:

" *First.* Were the Bell's Gap Railroad Company and the Clearfield and Jefferson Railway Company completely dissolved by the consolidation and merger under the act of 1861.

" *Second.* What property, right and interest passed to the Pennsylvania and Northwestern Railroad Company, under the agreement of 1st January, 1890, and the act of 1861.

" *Third.* Can the rights passing under the agreement of 1st January, 1890, and the act of 1861, be enforced by the Pennsylvania and Northwestern Railroad Company.

" These several inquiries are in their nature judicial and entirely for the court; the answer thereto depends entirely upon the construction of the consolidation and merger act of 16th May, 1861, P. L. 702, and the articles of consolidation entered into thereunder.

" The first section of the act enacts that ' it shall be lawful for any railroad company chartered by the commonwealth to merge its corporate right, powers and privileges into any other railroad company so chartered, connecting therewith,' etc.

" The first and second paragraphs of the second section deal with the conditions of the agreement of consolidation and manner of its ratification by the stockholders of the different companies, parties thereto.

" The third section deals with the effect of the act of merger and the material part thereof is in the language, viz. :

" ' Upon the filing of the said certificate and copy of agreement, in the office of the secretary of the commonwealth, the said merger shall be deemed to have taken place, and the said companies to be one corporation, possessing all the rights, privileges and franchises theretofore vested in either of them ; and all the property, real, personal and mixed and debts due and rights of actions, shall be deemed and taken to be transferred to and vested in the company into which such merger may have been made, without further act or deed; and all property, all rights of way, and all other interests, shall be as effectually the property of such company or corporation into which said merger may have been made, as they were of either of the former corporations, parties to said agreement,' etc.

" The first section plainly indicates that the Clearfield and Jefferson Railway Company, under the articles of agreement when read with it, provides only for the merger with and into the Bell's Gap Railroad. There is nothing in the act of 1861 which recognizes the creation of an entirely new, distinct and separate corporate body chartered by the commonwealth. The

reverse is true, and the language is express, that all the rights of the one company so chartered pass into and merge in the other railroad company so chartered.   And so it is especially set forth in the agreement of the 1st of January, 1890, viz.: ' that is to say that the capital stock, rights, franchises, powers, privileges and property of the Clearfield and Jefferson Railway Company, shall be and from the 1st day of January, A. D. 1890, transferred to and vested in the said Bell's Gap Railroad Company, and thereupon this agreement shall be deemed and taken to be the act of consolidation of the corporations, parties hereto.'

" It is true that the name was changed to that of the Pennsylvania and Northwestern Railroad Company, but this does not affect the construction to be given to the articles of consolidation under the provisions of the act of 1861.   The fact remains that the Clearfield and Jefferson Railway Company was merged into the Bell's Gap Railroad Company; no charter was ever issued under letters patent from the commonwealth to the Pennsylvania and Northwestern Railroad Company.   It is in legal effect the whole stock, right, property, franchises, privileges and interest of the consolidated Bell's Gap Railroad Company.

" The act of April 27, 1864, P. L. 617, under which the stockholders of the Bell's Gap Railroad Company took one and one fifth shares of new stock for each share of old, and under which the increase of capital was made, is a supplement to the act of 1861, and it emphasizes this thought.

" What then passed by the act of consolidation and merger? Every right, franchise, privilege, property, claim and interest possessed by the Clearfield and Jefferson Railway Company became at once the property of the consolidated Bell's Gap Railroad Company, under the new name of the Pennsylvania and Northwestern Railroad Company.

" It will be observed that the bond in question was given to the Bell's Gap Railroad Company to be paid to the said railroad company, its certain attorney, successors or assigns.   Under the articles of consolidation the corporate existence of the Bell's Gap Railroad Company was preserved as the absorbing company, and except for the change of name no question could have arisen as to the right to recover thereon.   It is because of the change of name that we are confronted with this whole inquiry.

" Under the lease the Bell's Gap Company operated exactly the same lines of road as it does under the consolidation.

" No limit of time was made in the condition of the bond, its term was coextensive with the life of the agent, its sole condition was faithful performance of his duties as agent, as set forth in the bond, ' and such other duties as may from time to time be assigned to or devolve upon him as such agent.' Admitting, for the sake of the argument, that the old companies were at once dissolved and a new company created by the act of merger,

" How are the sureties injuriously affected by this consolidation or merger? The change was made under a general public statute, binding upon them as on every other citizen of the state, and as we have seen, no greater duties were cast upon the agent than he expressly agreed to perform, and to which they assented.

" This bond was a property interest of the Bell's Gap Railroad Company, and passed to the new company, if it be conceded that one was created by the agreement of 1st January, 1890, by the terms of the third section of the act of 1861, without any further action being taken by the Bell's Gap Railroad Company. The language of this third section is very comprehensive and covers every species of property and interest belonging to the parties to the act of merger.

" But can this action be maintained in the name of the present plaintiff? The Pennsylvania and Northwestern Railroad Company, being but the new name of the Bell's Gap Railroad Company, after the consolidation and merger, we see no insurmountable difficulty. The case having been tried upon its merits, if it is necessary to do so, the action can be so amended as to bring it in the name of the Bell's Gap Railroad Company, now to the use of the Pennsylvania and Northwestern Railroad Company, and thus obviate any difficulty.

" If it be treated as a new corporation arising from the act of consolidation, then the authorities are abundant that the action is properly brought in the name of the Pennsylvania and Northwestern Railroad Company: Indianola v. Fryer, 11 Am. and Eng. R. R. C. 324; Houston and T. C. Railway v. Shirley, 4 Ibid. 443.

" From all the consideration that we have been able to give

PA. & N. R. R. CO. *v.* HARKINS ET AL., Appellants. 133

this case we are of the opinion that there is no such change arising from the consolidation and merger, under the act of 1861, as deprives the plaintiff of the right to recover for the default made."

*Errors assigned* were (1) refusal of defendants' points given in the opinion, quoting them; (2) directing a verdict for the plaintiff (3) for $330.88 instead of $2,000; (4) overruling defendants' motion for judgment n. o. v.; (5) entering judgment for plaintiff (6) for $330.88; (7) the nonappearance of the original obligee as a party to the suit.

*A. L. Cole, George M. Bilger* with him, for appellants.

*Daniel J. Neff, J. D. Hicks* and *Murray & Gordon* with him, for appellee.

PER CURIAM, May 2, 1892:

The judgment in this case is affirmed upon the opinion of the learned court below.