GUARDIAN DEPOSITORS CORP. *v.* CURRIE.

1. CORPORATIONS—CREATION—SOVEREIGNTY.
   The creation of a corporation appertains to the sovereignty under which it was created.

2. CONSTITUTIONAL LAW—RELATIONS BETWEEN STATES AND UNITED
STATES.
    Within their respective spheres the governments of the several
    States and the government of the United States are as sovereign
    as if they were two independent foreign states, although both
    exist and are exercised within the same territorial limits (U. S.
    Const. Am. 10).

3. STATUTES—CONSTRUCTION BY A FEDERAL COURT.
    While a Federal court, in determining the policy of a State from
    its statutes and their construction, follows the opinion of the
    State court except as it may be affected by the Constitution
    of the United States, when Federal legislation is involved the
    Federal court adopts its own view.

4. BANKS AND BANKING—CONSOLIDATION OF STATE AND NATIONAL
BANKS—STATUTES.
    Where a State has no law preventing or forbidding the consolida-
    tion of a State and national bank in the same county, city
    or town, the charter of the State bank is not extinguished
    by such a consolidation (40 Stat. at L. 1043, as amended by
    44 Stat. at L. 1225).

5. CORPORATIONS—CONSOLIDATION.
    A consolidation of corporations, under statutes which impose all
    obligations and confer all rights of the constituent companies
    on the consolidated company, is to be regarded merely as a
    continuance of the old corporations, under a new name, as to
    the business of the old corporations.

6. BANKS AND BANKING—CONSOLIDATION—STATE BANK NOT DIS-
SOLVED.
    A State bank is not dissolved because the bank consolidates with
    a national bank in the same city and continues in business as a
    national bank (40 Stat. at L. 1043, as amended by 44 Stat. at
    L. 1225; 3 Comp. Laws 1929, § 11956).

7. GUARANTY—CONSOLIDATION OF OBLIGEE STATE BANK WITH NA-
TIONAL BANK.
    Defendant guarantor of yacht club's note to State bank which
    consolidated with a national bank in same city remained liable
    whether the guaranty is a general or special one since the
    State bank was not dissolved by the consolidation (40 Stat.
    at L. 1043, as amended by 44 Stat. at L. 1225; 3 Comp. Laws
    1929, § 11956).

8. SAME—RENEWAL OF NOTE.

Obligation of guaranty was not destroyed by unauthorized renewal of original note where guaranty provided for borrowing by yacht club maker on promissory note or renewals and for punctual payment of such notes when due whether at maturity or at an accelerated or extended date.

9. BILLS AND NOTES—RENEWALS—PAYMENT.

Generally the renewal of a note is not payment of the obligation.

Appeal from Wayne; Hart (Ray), J., presiding. Submitted January 2, 1940. (Docket No. 10, Calendar No. 40,752.) Decided March 15, 1940.

Assumpsit by Guardian Depositors Corporation, a Michigan corporation, against Thomas E. Currie, Dr. George L. Renaud and others for sums due on note and guaranty. Judgment for plaintiff. Defendant Renaud appeals. Affirmed.

*Robert S. Marx, Lawrence I. Levi, Frank M. Wiseman,* and *Thomas L. Conlan,* for plaintiff.

*C. Upton Shreve* (*Milton Roberts,* of counsel), for defendant.

SHARPE, J.  This is an action to collect on a guaranty of an obligation of the Grosse Pointe Yacht Club. The facts are not in dispute. On January 9, 1928, defendant Dr. Renaud together with several other persons signed an instrument guaranteeing the payment of the principal and interest of a certain note or notes of the aggregate amount of not to exceed $250,000 made or to be made by the Grosse Pointe Yacht Club to the Griswold-First State Bank. Dr. Renaud's liability on this guaranty was limited to $10,000. He has been credited with $6,942.48 on the principal of his guaranty leaving $3,057.52 as the principal balance.

The agreement signed by Dr. Renaud and others reads as follows:

"Whereas, Grosse Pointe Yacht Club, a corporation organized and existing under and by virtue of the laws of the State of Michigan, is authorized to borrow money for its corporate purposes and to issue its notes or other obligations therefor; and

"Whereas, by appropriate resolution of its board of directors, it has determined for such purposes to borrow the sum of $250,000, to be evidenced by its promissory note or notes and/or renewals thereof from time to time given to the Griswold-First State Bank, of Detroit, Michigan.

"Whereas, the parties hereto as guarantors desire, in consideration of the loan above set forth, to guarantee the prompt and punctual payment of both principal and interest of such note or notes as the same mature and become payable,

"Now, therefore, for and in consideration of the premises and the mutual obligations of the parties hereto, and for the purposes of inducing the respective parties hereto to become guarantors of the said note or notes, the undersigned first parties each for himself, severally and not jointly, agree to and with each other, and with the Griswold-First State Bank of Detroit, Michigan, that they will and do hereby guarantee to the said "Bank," the punctual payment when due, whether at maturity or at an accelerated or extended date, of the principal of a certain note or notes of the aggregate amount of not over $250,000 and the interest thereon, according to the tenor thereof made by Grosse Pointe Yacht Club to said "bank" from time to time hereafter. Provided always that such guarantee shall not extend to a greater sum in the aggregate as to any one guarantor than the amount set opposite his name respectively at the foot of this guarantee, the intent hereof being that this guarantee shall be unconditional except that the several liability of each guarantor shall be limited to the amount set opposite his name.

"Diligence and notice shall not be required; nor shall any change in any provision of said note or

notes or any indulgence in anywise affect the obligation hereof, whether made or granted with or without notice; the obligation hereunder shall be absolute and primary and performable on demand."

About February 28, 1929, the Griswold-First State Bank was consolidated with the National Bank of Commerce of Detroit, a national banking association, under the charter and the corporate title — National Bank of Commerce of Detroit. At this time, the indebtedness of the Gross Pointe Yacht Club to the Griswold-First State Bank was $250,000.

On October 6, 1931, a note was issued by the Grosse Pointe Yacht Club to the National Bank of Commerce in the amount of $174,882.34 payable in 90 days after date. Sums were credited from time to time upon the liability created by this note, but it was never paid in full.

On December 31, 1931, the National Bank of Commerce of Detroit consolidated with the Guardian Detroit Bank, a Michigan banking corporation, under the charter of the National Bank of Commerce of Detroit and the corporate title, "Guardian National Bank of Commerce of Detroit." On May 11, 1933, a receiver was appointed of the Guardian National Bank of Commerce of Detroit and on July 20, 1935, the Guardian Depositors Corporation, plaintiff herein, purchased the assets of the Guardian National Bank of Commerce of Detroit.

Plaintiff brings action to establish liability on the part of defendant Dr. Renaud as guarantor of the note of October 6, 1931, issued by the Grosse Pointe Yacht Club to the National Bank of Commerce. Defendant filed a motion to dismiss which was denied. After trial defendant renewed his motion to dismiss which was denied and judgment was entered for plaintiff against Dr. Renaud for $4,241.10, representing principal and interest.

Defendant appeals and contends that the note involved in the litigation was not issued to the Guardian Depositors Corporation, but its remote predecessor, the National Bank of Commerce; therefore, plaintiff is not entitled to recover on the guaranty for default of the yacht club unless the National Bank of Commerce could have done so; that the National Bank of Commerce could not replace the Griswold-First State Bank as such obligee, because (1) the guaranty was a special guaranty, addressed to a particular obligee, namely, the Griswold-First State Bank and was not assignable, and (2) the corporate existence and identity of the Griswold-First State Bank was completely dissolved and destroyed by the consolidation with the National Bank of Commerce, and the latter cannot exercise the nonassignable rights of the former on the theory that the corporate existence of the Griswold-First State Bank was preserved and continued in the consolidated bank.

Plaintiff contends that under 44 Stat. at L. 1225 the corporate entity and identity of the constituent corporations to a consolidation, as is involved in the case at bar, is not lost, destroyed, dissolved or disturbed. The result is merely the continuation of the same corporate entities under the new name. Therefore, it is unnecessary and immaterial whether the guaranty is special and nonassignable.

The consolidation in question here was effected under act of Congress November 7, 1918, chap. 209, 40 Stat. at L. 1043, as amended by Act of February 25, 1927, chap. 191, § 3, 44 Stat. at L. 1225. The pertinent section of this statute reads as follows:

"That any bank incorporated under the laws of any State, * * * may be consolidated with a national banking association located in the same county, city, town, or village under the charter of such national

banking association. \* \* \* The capital stock of such consolidated association shall not be less than that required under existing law for the organization of a national banking association in the place in which such consolidated association is located; and all the rights, franchises, and interests of such State or district bank so consolidated with a national banking association in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises, and interests \* \* \* in the same manner and to the same extent as was held and enjoyed by such State or district bank so consolidated with such national banking association. \* \* \* No such consolidation shall be in contravention of the law of the State under which such bank is incorporated.''

The above statute was construed in *Commonwealth* v. *First National Bank & Trust Company of Easton,* 303 Pa. 241 (154 Atl. 379). In that case the Northampton Trust Company and the First National Bank of Easton consolidated under the provisions of 44 Stat. at L. 1225 (see 12 USCA, 34a). The consolidated corporation urged that the consolidation had worked a dissolution of the trust company. In denying this contention, the Pennsylvania court said:

''There is no law in Pennsylvania which prevents or forbids such consolidation; neither is there any Pennsylvania legislation which recognizes such a consolidation as working a dissolution of the Pennsylvania corporation which is in the consolidation. The act of April 9, 1856, P. L. 293, provides a method by which a charter of a corporation created by this Commonwealth may be dissolved. It is a corollary of this that only by obedience to the prescriptions

of this act can a corporation called into being by Pennsylvania be dissolved. Chief Justice Marshall, in *McCulloch* v. *Maryland,* 4 Wheat. (17 U. S.) 316, 367, said: 'The creation of a corporation * * * appertains to sovereignty. This is admitted. But to what particular sovereignty does it appertain? Does it belong to one more than to another? In the United States, the powers of sovereignty are divided between the government of the union, and those of the States. They are each sovereign with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other.'

"Article 10 of (amendments to) the Federal Constitution provides that 'the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' The United States government has no powers except those 'expressly given, or given by necessary implication.' Marshall, Chief Justice, in *Martin* v. *Hunter's Lessee,* 1 Wheat. (14 U. S.) 304, 326. The respective supremacies of the State and national government in their respective spheres of sovereignty have been meticulously observed by the nation and each individual State. Within their individual spheres they are as sovereign as if they were two independent foreign states. There are many governmental activities in respect to which the Federal government is not the States' superior or sovereign. McLean, J., in *License Cases,* 5 How. (46 U. S.) 504, 588, says: 'The powers of the general government and of the State, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres.' * * *

"We conclude that when a State bank consolidates with a national bank located in the same county, city, town, or village, pursuant to the acts of Congress authorizing such a consolidation, the charter of the State bank is not thereby extinguished and the State corporation is not thereby dissolved. Pennsylvania

could by appropriate legislation provide that under such circumstances a State bank is *ipso facto* dissolved and it might be expedient so to provide, but this court cannot, under the guise of a judicial decision, enact such legislation. The charter of the Northampton Trust Company still exists and the company still maintains in contemplation of law its corporate personality. Its petition praying for dissolution under the Pennsylvania act of April 9, 1856, P. L. 293, should have been granted.''

In *Ex parte Worcester County National Bank,* 279 U. S. 347, 359 (49 Sup. Ct. 368, 61 A. L. R. 987), the court said:

''In passing on this appeal, we must observe that, in determining the policy of a State from its statutes and their construction, we of course follow the opinion of the State court except as it may be affected by the Federal Constitution. * * * But when the question arises as to what is the proper interpretation and construction of Federal legislation, this Court adopts its own view.

''It is very clear to us that Congress in the enactment of section 3 in the act of February 25, 1927, was anxious even to the point of repetition to show that it wished to avoid any provision in contravention of the law of the State in which the State trust company and the national bank to be consolidated were located.''

The conclusion to be arrived at from the authority of *Commonwealth* v. *First National Bank & Trust Company of Easton, supra,* is that where a State has no law preventing or forbidding the consolidation of a State and national bank in the same county, city or town, the charter of the State bank is not thereby dissolved. The above case is to be distinguished from *Worcester County National Bank,* 263 Mass. 444 (162 N. E. 217), affirmed in 279 U. S. 347 (49 Sup. Ct. 368, 61 A. L. R. 987) relied upon by defendant. That case involved the construction of a local

act of the State of Massachusetts which provided in part that the charter of a trust company which shall consolidate or merge or be absorbed by another bank or trust company shall be void except for the purpose of discharging existing obligations and liabilities.

The Michigan statute governing consolidations of State and national banks at the time of the consolidation in question was 3 Comp. Laws 1929, § 11956 (Stat. Ann. § 23.61), which provided:

"Any bank organized or existing under this act may consolidate with or purchase the assets and assume the liabilities of any national banking association organized under the laws of the United States. In case any bank organized or existing hereunder is to be absorbed by a national banking association the commissioner of the banking department shall require to be filed in his office, with the secretary of State and in the office of the clerk of the county in which the bank is located, certified copies of all proceedings had by the stockholders of each bank, which shall set forth that stockholders owning at least two-thirds of the capital stock voted in favor of such liquidation and consolidation."

Section 11956 makes no specific provision for the continuance of the State banking entity, but does provide:

"It shall also be the duty of the commissioner of the banking department to cause an examination of each bank and no such consolidation shall be made without the consent of the commissioner of the banking department, and not then to defeat or defraud any of the creditors of either of the banks parties to such consolidation."

The issue that we have been discussing has not been squarely passed upon by our court, but in *Reichert* v. *State Savings Bank of Royal Oak,* 261 Mich. 227, 230, we said:

"The receiver contends that the change of school districts has been only one of name, and where an obligee or principal in a bond is a corporation which merely changes its name, without being a new creation, the bond remains effective. * * *

"This rule has been extended to the holding that a consolidation of corporations, under statutes which impose all obligations and confer all rights of the constituent companies on the consolidated company, is to be regarded merely as a continuance of the old corporations, under a new name, as to the business of the old corporations. *Wright* v. *Railway,* 141 Mo. App. 518 (126 S. W. 517); *Pennsylvania & N. R. Co.* v. *Harkins,* 149 Pa. 121 (24 Atl. 175); *Eastern Union Railway* v. *Cochrane,* 9 Exch. (Welsby, Hurlstone & Gordon) 197 (156 Eng. Rep. 84); *Lincoln Safe Deposit Co.* v. *Continental Life Ins. Co.,* 213 Mo. App. 561 (249 S. W. 677)."

The above case indicates the attitude of our court as to "continuance of the old corporation." Under the reasoning of *Commonwealth* v. *First National Bank & Trust Company of Easton, supra,* the Michigan charter was not extinguished and the State corporation is not thereby dissolved; consequently, the defendant is liable to the National Bank of Commerce because of the continuance of the identity of the Griswold-First State Bank in the National Bank of Commerce.

Appellant next contends that the unauthorized renewal of the original note or notes destroyed the obligation of the guarantors under the guaranty. We are not in accord with this view. The terms of the guaranty provides for renewals:

"To borrow the sum of $250,000, to be evidenced by its (the club's) promissory note or notes and/or renewals thereof from time to time given to the Griswold-First State Bank, of Detroit, Michigan."

Moreover, the terms of the guaranty provide for the punctual payment of the note or notes when due, "whether at maturity or at an accelerated or extended date."

The action in the case at bar is upon a renewal note. It is a general rule that the renewal of a note is not payment of the obligation. In *New Jersey Title Guarantee & Trust Co.* v. *McGrath,* 246 Mich. 553, 563, we said:

"It is evident from these authorities that the renewal of a promissory note projects the holder into the extended term of the renewal with the same rights and disabilities he acquired when he took the original note. Where the original is negotiated before its maturity, its due date has no effect upon a purchaser, but his rights and disabilities are to be determined as though, at the time he took the paper, the due date of the renewal were effectively made the due date of the original. It is the theory of renewal that the original engagement carries through its own period into the extended term, without interruption and change of status of any party to it."

We conclude that under the Federal statute, pursuant to which the bank consolidations here involved took place, the corporate existence of the Griswold-First State Bank was never terminated, but continued in the consolidated banking associations; that the guaranty provided for renewals; and that the holder of the renewal note retains the same rights acquired by the Griswold-First State Bank when it took the original note. Under our decision it is of no importance to determine whether the guaranty was general or special.

The judgment of the trial court is affirmed, with costs to plaintiff.

Bushnell, C. J., and Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.