## Ewing Estate

*Theodore O. Rogers*, for petitioners.

*George J. Brutscher* and *Thomas B. Harper, 3rd*, for Community Memorial Hospital.

*Lois Forer*, Deputy Attorney General for Commonwealth.

MACELREE, P. J., June 1, 1960.—

. . . By his will dated August 9, 1944, and duly probated in the Office of the Register of Wills of Chester County, and recorded in Will Book 60, p. 192 . . . William B. Ewing, M. D., provided, inter alia, as follows:

"I give, devise and bequeath unto the West Grove Community Hospital Association, the property now designated and used as a hospital, together with its furnishings, equipment and appurtenances for the perpetuation of its purposes in the efficient operation of a general hospital for the residents and neighbors of that community, Believing that the best welfare of such community will be served by continuing the established policy under which the hospital has been operating, encouraging full public support, I direct that the Board of Management shall include as members of such corporation the advice and support of the following named: Dr. Walter L. Wright, Harvey G. Shortlidge, James McClellan, Evan Sharpless, E. Frank Pusey, Thomas L. Passmore, William B. Ewing, Jr., Alice Hughes, the President of Rotary, priests and ministers of the several churches in West Grove and their successors in office, and such other persons and interest as such corporation from time to time may deem advisable. Should the institution cease by operation of law or by default to fulfill its purposes as a local community hospital serving the residents and neighbors of West Grove, the property passing hereunder shall revert to my estate, subject, however, to such obligations, debts, or mortgages as may have been lawfully incurred, created, and executed in the normal operation of said hospital and under the administration of the Board of Management of the same, whose right to incur the same is hereby secured."

". . . All the rest, residue and remainder of my estate, of every kind and nature, real, personal or mixed, and wherever situate, I give, devise and bequeath unto my son, William B. Ewing, Jr. and My daughter, Margaret E. Hoag in equal shares." . . .

A responsive answer was filed on behalf of the Attorney General of the Commonwealth of Pennsylvania.

The issue before this court is aptly stated in the brief filed on behalf of the Commonwealth of Pennsylvania, as follows:

"Where a testator devises certain real and personal property to a hospital association and provides that should the institution cease by operation of law, or 'by default' to fulfill its purposes as a local community hospital, then the property shall revert to his estate, and where the hospital transfers all of its assets to a corporation composed principally of the same individuals, which corporation operates a community hospital serving the same community specified in the will, and where this hospital continues the operations and functions of the old hospital, have the conditions under which the property reverts come into effect."

An orderly approach to the solution of this question, in the opinion of this court, requires that the court should make certain findings of fact. From the admissions in the pleadings and the credible evidence produced at hearing, this court makes the following

*Findings of Fact*

1. William B. Ewing, Jr., and Margaret Hoag, also known as Margaret E. Hoag, are the residuary devisees under the will of their father, William B. Ewing, M.D., deceased.

2. The said William B. Ewing, M.D., a resident of the Borough of West Grove, Chester County, died July 31, 1945, having first made his last will and testament

dated August 9, 1944, duly probated and recorded as has hereinbefore been set forth.

3. Decedent gave and devised to West Grove Community Hospital Association certain real estate as is hereinbefore set forth.

4. West Grove Community Hospital Association was and is a Pennsylvania nonprofit corporation formed under the second section of the Act of April 29, 1874, by an order of the court of Common Pleas of Chester County, dated December 27, 1927, and recorded in the office of the recorder of deeds, in Corporation Book 8, p. 377, and in said proceedings the name of William B. Ewing, M.D., decedent appears first among the subscribers and incorporators.

5. The purpose of the said corporation as set out in its charter was "to establish, maintain and conduct a general hospital at West Grove, Chester County, Pennsylvania, for the County of Chester and regions adjacent thereto, for the reception and medical or surgical treatment of the sick and injured; the said general hospital to be open to all classes, without distinction of color or creed, subject to such rules of admission as shall be adopted by the Board of Managers for the protection of the inmates and the community, and no cases of sickness or injury shall be refused the admission to said hospital on account of the inability of the applicant to pay the expenses of care and treatment so long as there may be accommodation in said hospital."

6. By said certificate, the affairs of the corporation were placed in the hands of a board of managers of not less than five nor more than 15 persons.

7. The real estate referred to originally consisted of an old hotel in the Borough of West Grove, Chester County, purchased by decedent in the year 1918.

8. By reason of its use by the late Doctor Ewing, it came to be known as the Doctor Ewing Hospital and

from 1918 to 1922 it was maintained and supported by Doctor William B. Ewing for the treatment of his own patients and for the benefit of patients of other physicians in the immediate neighborhood of West Grove.

9. About 1922 interested citizens in and about the Borough of West Grove formed a committee which solicited funds for a nonprofit corporation intended to be known as West Grove Community Hospital Association, which nonprofit corporation was organized in 1927.

10. Until the death of Doctor William B. Ewing, in July of 1945, title to the real estate remained in decedent.

11. The so-called West Grove Community Hospital undertook to maintain in one building 19 beds, two operating rooms and a nursery.

12. There was upon the same tract of land an adjacent building used as a nurses' home.

13. From 1927 until 1959, the West Grove Community Hospital was financed by gifts of food stuffs on a so-called Donation Day each year, by voluntary contributions from private individuals and to a limited extent by allotment from the local Community Chest of West Grove.

14. The building used for hospital purposes became inadequate.

15. The interior of the building was of wood construction, with an open stair well from the first to the third floor containing no elevator and never met acceptable standards for hospital facilities.

16. The West Grove Community Hospital was never accredited by the Commonwealth of Pennsylvania.

17. The surgical facilities in the hospital building were inadequate for major surgery and were devoted primarily to the treatment of accident cases arising in the immediate neighborhood.

18. Doctor William B. Ewing died in 1945 leaving a will containing the provisions hereinbefore set forth.

19. *From time to time the Department of Health of the Commonwealth of Pennsylvania became increasingly critical of the facilities of West Grove Community Hospital and indicated that it, the Commonwealth, would ultimately require it, the West Grove Community Hospital, to cease operations.*

20. As a result of these conditions discussions were initiated among the hospital staff, the board of managers and many civic-minded persons in the entire southern section of Chester County, including areas far removed from the Borough of West Grove, with the result that in the year 1955 an entirely new and distinct nonprofit corporation was organized, known as "The Community Memorial Hospital."

21. In support of this latter undertaking, upwards of 2,000 subscriptions were obtained from a vastly expanded area, including several single gifts of as much as $50,000 each.

22. On land donated for the use of this new institution and located near the Village of Jennersville, some three miles distant from the Borough of West Grove, there was constructed by and for the use of the Community Memorial Hospital, hospital facilities costing approximately $2,000,000 with a capacity of 50 bed patients and adequate facilities to serve the whole of southern Chester County and surrounding countryside.

23. Some of the same persons who had served upon the board of managers of the West Grove Community Hospital became members of the board of the "Community Memorial Hospital."

24. The Community Memorial Hospital was opened for operation on June 9, 1959, at which time all of the usable personal property, furnishings and equipment from the West Grove Community Hospital Associa-

tion were transferred to the Community Memorial Hospital.

25. The West Grove Community Hospital Association has not been dissolved but its board of managers have held no meetings since the transfer of its personal property to the Community Memorial Hospital.

26. The West Grove Community Hospital Association by reason of the facts hereinbefore set forth thereupon defaulted in the fulfillment of its purposes as a local community hospital serving the residents and neighbors of West Grove.

27. In recognizing this factual situation at a meeting of the board of directors of the Community Memorial Hospital on September 21, 1959, a resolution was duly adopted by the terms of which it was provided: "Said Community Memorial Hospital does hereby surrender to and agree that the grounds and buildings formerly occupied by the West Grove Community Hospital Association, as devised under the will of Doctor William B. Ewing, deceased, shall revert to the estate of the said Doctor William B. Ewing, deceased, as is specifically provided for in the will of the said decedent."

### Discussion

It is conceded by all parties in interest that the doctrine of cy pres is not involved.

The twofold issue before this court, briefly stated, is the determination of fact as to whether the institution known as West Grove Community Hospital Association either ceased by operation of law or has failed to fulfill its purposes as a local community hospital.

This court has found that it has failed to fulfill its purposes as a local community hospital.

The Commonwealth of Pennsylvania, properly joined as a party in interest, contends that the resolu-

tion passed by the board of directors of the Community Memorial Hospital was adopted under a mistake of law and that there was no intent upon the part of that board to make a gift of this property, dedicated to charity, to a private individual.

A footnote in the brief submitted by the Commonwealth very properly suggests that the Commonwealth would oppose any attempt on the part of a charity to make a gift to a private individual of property or funds dedicated to charitable purposes.

Such a position on behalf of the Commonwealth is both laudible in purpose and sound in law when the facts justify its application.

This court is of opinion that in the instant matter, it was neither the intent nor effect of such resolution to make such a gift.

In the instant case the land was devised by decedent upon a charitable trust, subject to a provision that if the institution by default should cease to fulfill the purposes directed in decedent's will, it should revert to decedent's estate.

From the credible evidence introduced, it is found as a fact that the Commonwealth of Pennsylvania, by its own Department of Health, declared the unfitness of the institution to serve the community and further declared that it would be required to cease its operation.

In the opinion of this court the cases cited by the Commonwealth, and ably commented upon by its Deputy Attorney General, correctly stated the law but are not applicable to the facts.

Shechter v. Shechter, 366 Pa. 30, cited by the Commonwealth, is authority for the proposition that the courts will not permit a change of corporate entity to defeat creditors or to defraud the public, but, on the contrary, the court will pierce the corporate veil and

treat corporate assets as if they were still belonging to the original owners from whom they were transferred.

That case had to do with a business corporation where fraud was alleged and the new corporation was but a mask.

No such situation exists here.

Pennsylvania Northwestern Railroad Company v. Harkins, 149 Pa. 121, is authority for the proposition "where one corporation consolidates with another a surety on the bond given to the original corporation is liable to the consolidated corporation."

No such situation as that exists here.

Laughlin Estate, 2 D. & C. 2d 270, is authority for the legal proposition that selling the real estate of the corporation will not be considered as tantamount to surrendering its corporate charter.

Again, no such situation exists here.

As this court interprets the petition of petitioners, it is not that the West Grove Community Hospital as a corporate entity has ceased by operation of law, but rather in the alternative that it has ceased by default to fulfill its purposes as a local community hospital serving the residents and neighbors of West Grove.

Predicated upon the facts as found, this court is of opinion that the question to be decided is governed by the law in Pennsylvania as stated in Randall's Estate, 341 Pa. 501, 508, 510.

In a comprehensive opinion by the late Mr. Justice Drew, the law in Pennsylvania was stated to be: "In ascertaining whether the trust herein involved was intended to be a specific or general one for charity, we must seek the testator's intention from an examination of the will. . . ."

Pursuing the matter further, in Randall's Estate, Mr. Justice Drew quoted with approval from Scott on Trusts, to the effect: " 'Where property is conveyed

or devised upon a charitable trust and it is provided that if the property is not used in the manner directed it shall revert to the settlor or his heirs, the trust is subject to a condition subsequent. *In such a case if the condition is broken, the settlor or his heirs are entitled to the property.*' " (Italics supplied.)

Accordingly, this court reaches the following

### Conclusion of Law

We conclude that the hereinbefore-described real estate, under the facts as found and under the law, reverts to the estate of William B. Ewing, for distribution to the residuary devisees in accordance with the terms of decedent's will.