GILLETT *v.* IVORY.

1. BANKS AND BANKING—ASSIGNMENT OF DEPOSITS—CONVEYANCE OF LIABILITIES—NOVATION—DEBTOR AND CREDITOR—SALE WITH ASSUMPTION OF INDEBTEDNESS—VENDOR AND PURCHASER—SUBSTITUTION OF DEBTORS.

Upon learning of the sale of a private bank, a depositor could refuse to accept the purchasers as his bankers, in place of the vendors, or he could affirm the arrangement made between them and look to the purchasers to pay his deposit.

2. SAME—ESTOPPEL.

Having knowledge that there was a sale and that as between themselves the vendors and purchasers had arranged for a substitution of debtors, plaintiff, a depositor, by permitting his money to remain on deposit, with the new banking firm, and making no demand on the vendors, and also by filing a claim for the amount of his deposit with the receiver of the purchasers, after their failure, accepting from the receiver two dividend payments thereon, thereby became, by novation, a creditor of the insolvent purchasers, and lost his remedy against the vendors; plaintiff was estopped to claim that he did not assent to the substitution.

3. SAME—ELECTION OF REMEDIES.

While the facts do not constitute an election of remedies, they establish a substitution of debtors with plaintiff's consent.

4. SAME—RECEIVERS—JURISDICTION—ATTACK.

Plaintiff could not, after participating in the proceeds of the

receivership, raise the objection that the court of chancery had no jurisdiction in that suit.

5. NOVATION—CONTRACTS.

The necessary elements to establish a novation are (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all the parties to the substitution; and (4) the extinction of the old obligation and the creation of a valid new one.

Error to Lapeer; Smith, J. Submitted November 8, 1912. (Docket No. 8.) Decided December 17, 1912.

Assumpsit by Ransom Gillett against William E. Ivory and Una L. Bartenfelder, doing business as the Bank of Hadley, for certain sums deposited with defendants, evidenced by a certificate of deposit. Judgment for defendants on a directed verdict; plaintiff brings error. Affirmed.

*B. F. Reed* and *H. W. Smith,* for appellant.

*W. E. Brown,* for appellees.

On May 3, 1909, plaintiff deposited with defendants, who were then conducting a private banking business under the name and style of the Bank of Hadley, the sum of $400, at which time he received the following certificate:

"HADLEY, MICH., May 3rd, 1909.

"No. 1,157.

"CERTIFICATE OF DEPOSIT.

"Not subject to check.

"This certifies that R. H. Gillett has deposited with Bank of Hadley four hundred dollars, $400.00, payable to the order of himself in current funds on return of this certificate properly endorsed. With 4 per cent. per annum if left 12 months. No interest after maturity. No interest for fractional part of a month:

"UNA L. IVORY, Cashier."

On May 11, 1909, the defendants sold out said banking business to Mark L. Hagle and Ethel Varran, who continued the business under the same name. The defend-

ant Una L. Bartenfelder (whose name was then Ivory) continued to act as cashier of the bank after the sale, the same as she had acted before the sale. As between defendants and Hagle and Varran, it was agreed that the new owners should assume and pay the obligations of the bank as part of the purchase price. The fact of the sale of the bank by defendants to Hagle and Varran was advertised in the local newspaper, and became known to plaintiff. In June, 1909, plaintiff entered into a contract with Hagle to erect a building to be used by the bank. Plaintiff knew at that time that Hagle was interested in the bank. He received payments on account of the building from Una L. Ivory (Bartenfelder) acting as cashier for the bank. Plaintiff demanded payment from the bank on his certificate of deposit on Friday, October 8, 1909, and again on October 9th. On October 11th the bank closed its doors, and on October 16th Hagle absconded.

Shortly thereafter a bill of complaint was filed in the circuit court for Lapeer county, wherein one Virgil A. Bayley was complainant and Hagle and Varran were defendants. The bill set up the fact that the bank was insolvent; that Hagle had absconded, having previously withdrawn and concealed or disposed of large sums of money and other assets of the bank; that the bank was left without any one to manage its affairs; and that Hagle and Varran threatened to withdraw and dispose of the remaining assets. The prayer asked for the dissolution and winding up of the copartnership, for the appointment of a receiver, and for injunctive relief. A receiver was appointed under this bill of complaint, who took possession of the assets of the bank and distributed them to the creditors. In order to participate in the fund in the hands of the receiver, plaintiff signed and verified the following proof of claim:

"STATE OF MICHIGAN, }
"COUNTY OF LAPEER, } ss. :
    "R. H. Gillett, being duly sworn, deposes and says that

the Bank of Hadley is indebted to the deponent in the sum of $409.65. Deponent further says that he is informed and believes that said Bank of Hadley is a copartnership, and that the members of said copartnership are Mark L. Hagle and Ethel Varran, and deponent makes this affidavit for the purpose of proving his claim against said Bank of Hadley and Mark L. Hagle and Ethel Varran. Deponent further says that said claim consists of a certificate of deposit with said bank.

"R. H. GILLETT.

"Subscribed and sworn to before me this 10th day of December, A. D. 1909.

"FRANK T. HADLEY,
"Notary Public, Lapeer County, Michigan.
"My Com. expires August 18th, 1911."

The receiver made and plaintiff accepted two dividend payments which were indorsed upon his certificate of deposit as follows:

"January 3rd, 1910, paid on the within $102.41. January 13th, 1911, paid on the within $40.06.

"GRANT STIMSON, Receiver."

At the time of the trial the receiver had not been discharged, but was still administering the estate.

Touching plaintiff's knowledge of the situation at or near the time of the sale, he testified:

"I could not tell you how long it was after this deposit was made that I learned they had sold out, a month afterwards anyway. I learned they had sold out from Will Ivory. It was in front of Guiles' blacksmith shop. I had a talk with him there. I told him I heard he had sold out, and I stated to him that I had some money in the bank at that time.

"Q. Did he then tell you if you didn't want to leave the money there you could go and get it?

"A. No, sir.

"Q. What did he say?

"A. I told him, I says, 'Is it sold out,' and he said it was. I says, 'If that is the case, I am going up and get my money. I don't like it a bit;' and he says, 'I wouldn't do it because it is all right. I got lots more money in there than you have;' and he says, 'I ain't scared a bit.' That was about all the conversation I

had with him at that time. I knew that he had sold out, and that I could go and get my money if I wanted to. I didn't go and get it. I did not have a talk with his sister after that. I had no talk with her about it whatever. I did not tell his sister I was going to leave the money there. * * *

"Q. Why did you contract with Lee Hagle, instead of William Ivory and Una Ivory?

"A. Because Lee Hagle was the man who came to me to do the work, and I done it. That was after the Ivorys were out of business. I knew they were out of business before I commenced the bank building. I constructed that building knowing that I had money in the Bank of Hadley, and I knew at that time that Hagle was interested in the Bank of Hadley. I received my pay from Una L. Ivory. I put my signature to a paper when I received my pay. It was a receipt for the money. The sale of the bank was before I made the contract to build the building. I had no talk with Mr. Hagel or Miss Ivory with reference to my leaving the money if I got the contract.

"Q. How much did you expect to make clear?

"A. I expected to make a couple of hundred."

Plaintiff in this suit seeks to recover from defendants the sum of $288.01, being the balance unpaid upon his certificate of deposit. At the conclusion of the proofs, both plaintiff and defendants moved the court for a directed verdict. Defendants' motion was granted, and plaintiff's denied. Error is assigned upon both rulings.

BROOKE, J. (*after stating the facts*). The court in directing a verdict in favor of defendants held, as a matter of law, that plaintiff had elected his remedy in proceeding against Hagle and Varran, instead of against defendants. To define plaintiff's acts as an election of remedies may not be strictly accurate. When plaintiff first learned of the sale of the bank to Hagle and Varran, he had two courses open to him. It is immaterial whether these courses be denominated as remedies or not. He could refuse to accept Hagle and Varran as his debtors in the place of defendants, or he could affirm the arrange-

ment which he knew had been made between defendants and Hagle and Varran, and look to them to pay his deposit, instead of to defendants. It is clear that he knew at that time that Hagle and Varran had undertaken to pay the depositors in the bank, for he testifies:

"I knew that he [defendant Ivory] had sold out, and that I could go and get my money if I wanted to. I didn't go and get it."

Of course, he could not get his money from Hagle and Varran (with whom prior to that time he had had no contract relations) upon any other theory than that they had, as between themselves and defendants, agreed to assume and pay the indebtedness of the old partnership. The fact, therefore (emphasized by plaintiff), that he was never told that Hagle and Varran had assumed the old indebtedness, becomes unimportant. Having knowledge of the sale and of the fact that as between themselves there had been a substitution of debtors, it would seem clear that plaintiff elected to accept Hagle and Varran as his debtors in the place and stead of the defendants, who were then bounden to him. This election is evidenced by the fact that he permitted his deposit to remain in the hands of Hagle and Varran for some months after he had knowledge of the sale, by the fact that he knew he could get his money from them if he wanted to, and by the further fact that during those months he made no demand upon defendants for his money, though he knew that they had sold the bank and had retired from the business.

This, however, is not all. After the bank had failed and Hagle had absconded, and a receiver had been appointed, he filed his claim with the receiver. This claim is verified by his oath, and recites that Hagle and Varran are indebted to him in the amount of the certificate of deposit. Obviously this debt was not due to plaintiff from both Hagle and Varran and defendants. If defendants were his debtors at that time, plaintiff had no right to participate in a fund to which the creditors of Hagle and

Varran alone were entitled. Three months after the receiver was appointed he accepted from him a dividend and another a year later.

These facts, concerning which there is no dispute, indicate in our opinion a novation rather than a technical election of remedy. Counsel for defendants seem to concede that, if his clients are entitled to a verdict upon the ground of novation, that question was one of fact upon this record, and should have been submitted to the jury. While it may be urged that plaintiff's conversation as detailed by him with defendant Ivory at the time of the sale and his subsequent conduct up to the time of the failure do not conclusively establish a novation, they very persuasively lead to that conclusion, and plaintiff's conduct after the failure can be accounted for upon no other theory than that he had accepted a substitution of debtors at the time he learned of the sale. This conduct, we think, conclusively establishes the fact that he had accepted such substitution. It is urged by plaintiff that the court of chancery was without jurisdiction in the receivership matter, and therefore plaintiff is not bound by his acts in connection therewith. We need not determine whether the equitable proceeding is defective or not. Plaintiff is in no position to raise the question. He recognized the propriety of the proceeding and participated in the benefits arising therefrom. We give consideration to his acts in relation to the receivership only for the purpose of determining how far they give character to his prior acts and conduct as bearing upon the question of novation.

The necessary legal elements to establish a novation are (1) parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all the parties to the substitution; and (4), lastly, the extinction of the old obligation and the creation of a valid new one. The first and second of these elements are conceded to exist. As to the third, it appears conclusively that the defendants and Hagle and Varran agreed to the substitution, and we think it is demonstrated that plaintiff like-

wise so agreed. If he did so, the fourth element follows as a matter of law. Ample consideration for the novation is found in the transfer of the fund to Hagle and Varran, their undertaking to pay plaintiff, and his assent thereto. Plaintiff cites and relies upon the recent case of *Harrington-Wiard Co.* v. *Manufacturing Co.*, 166 Mich. 276 (131 N. W. 559). We have carefully examined that case, and can find nothing therein inconsistent with our conclusions herein. The only equivocal act (tending to prove novation) in that case was the sending of a statement of account to the Lion Motor Car Company, and under the testimony that fact was held to be insufficient to carry the case to the jury. In the course of his opinion Mr. Justice STONE, says:

"To constitute novation the creditor must have consented to the discharge of the original debtor, and must have accepted the promise of the new debtor.

"It is true that it has been held that it is not essential that the assent to, and the acceptance of, the terms of novation be shown by express words to that effect, but that the same may be implied from the facts and circumstances attending the transaction, and the conduct of the parties thereafter."

Plaintiff's conduct after he learned of the sale and after the insolvency of the bank should be held to estop him from now claiming that he did not assent to the novation.

Relying upon such assent, defendants took no steps to protect themselves under their contract with Hagle and Varran. Indeed, while plaintiff was asserting that Hagle and Varran were his debtors, they were unable to do so. Now that he finds that Hagle and Varran are financially unable to pay his claim in full it is too late for him to change his position, and compel defendants to respond at a time when they cannot protect themselves.

Judgment is affirmed.

MOORE, C. J., and STEERE, McALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.