DANIELS *v*. PAGE STEEL & WIRE CO.

1. CONTRACTS—PARTIES—DEBTOR AND CREDITOR.

A contract between plaintiff and the exclusive sales agents of defendant, whereby plaintiff was to have the exclusive sales rights of defendant's product in certain territory and be paid his commissions on sales direct by defendant, to which the latter orally assented, did not create a contract relation between plaintiff and defendant rendering the latter liable in an action for the balance due under said contract, which was in dispute, the debt, if any, being the debt of said sales agents.

2. NOVATION—PARTIES—SUBSTITUTION OF PARTIES—EVIDENCE—SUFFICIENCY.

Mere oral assent of defendant to an agreement between its sales agents and plaintiff whereby it should pay commissions owing to plaintiff under his contract with them direct to him, did not amount to a novation, rendering it liable for a disputed balance due, in the absence of any evidence that plaintiff ever released said sales agents from their contract relations with him, or that defendant con-

sented to be substituted as a debtor of plaintiff in the place of its sales agents, or that its obligation to its sales agents under its contract with them was ever canceled.

Error to Lenawee; Hart (Burton L.), J. Submitted June 22, 1921. (Docket No. 66.) Decided October 3, 1921.

Assumpsit by William Smalley Daniels against the Page Steel & Wire Company for commissions on the sale of certain windshields. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Affirmed.

*Baldwin & Alexander,* for appellant.

*J. N. Sampson* and *Charles L. Robertson,* for appellee.

STONE, J. This action was brought to recover certain commissions claimed to be due the plaintiff on the sale of windshields manufactured by the defendant. The case was tried before a jury which returned a verdict for the plaintiff for upwards of $6,000. The trial court, having reserved the right to do so, set aside the verdict and entered a judgment for defendant of no cause of action upon the grounds that there was no contract relation established by the evidence, or no relation of debtor and creditor between the plaintiff and the defendant; and also that if there was a promise to pay by this defendant, being the debt of another, it would have to be in writing, under the statute of frauds. The plaintiff has brought the case here by writ of error.

The plaintiff, on February 23, 1911, was a sales agent for manufacturers, and the defendant (then known as the Page Woven Wire Fence Co.) with

offices and factory located at Adrian, Michigan, was engaged in the manufacture of windshields for automobiles, and other specialties.   On or about September 26, 1910, the defendant entered into a contract with Conover & Robinson, of New York city, giving them the exclusive sale rights of all windshields manufactured by the defendant, and agreed to pay Conover & Robinson certain commissions on all shields manufactured and sold by defendant.

Conover & Robinson, on February 23, 1911, entered into a contract with plaintiff by the terms of which plaintiff was given the exclusive sale rights of all shields manufactured by defendant, his territory to be all of the United States, except the States of New Jersey and Connecticut and that part of New York State defined as counties along the Hudson river and including the cities of Albany and New York.   This agreement between Conover & Robinson and the plaintiff also contained the provision that if 10,000 shields were marketed during the first year, the agreement should automatically be extended for the second year, and if a minimum of 25,000 shields were marketed the second year, it should remain in force for the third year.

Owing to the fact that the defendant was not able to manufacture and deliver shields, plaintiff was not given the opportunity to sell the number of shields mentioned in the contract, and this fact was recognized by Conover & Robinson and the defendant, and it was agreed that plaintiff should be given a contract for a second year, so that he might have the advantage of the work he had been doing during the first year.

On the 14th day of December, 1911, plaintiff was given a new contract by Conover & Robinson, spoken of as "the rider" to the agreement of February 23, 1911.   That contract was as follows:

"December 14, 1911.

"Rider to agreement of February 23, 1911, signed by signers of this.

"The term of this agreement shall be extended to December first, 1912, and if a minimum of 2,500 shields have been shipped by Page Woven Wire Fence Company, either on direct orders or those sent them by Smalley Daniels' offices, or otherwise sold, then the exclusive selling arrangement with Smalley Daniels shall continue for one year additional, from December, 1912, and if a minimum of 10,000 has been sold during 1913, the selling agreement shall remain in force during 1914.

"In consideration of Smalley Daniels maintaining an office in Detroit, Mich., after March first, 1912, for the purpose of attending to the factory correspondence as pertains to the selling of shields, we agree that Smalley Daniels shall have full ten per cent. commission on all shields sold or shipped by Page Woven Wire Fence Company under the terms of our contract with them, and to authorize them to so pay Smalley Daniels all such commissions direct.

"Accepted:          EDWIN K. CONOVER,
"SMALLEY DANIELS.     WALTER W. ROBINSON."

This last agreement was read over and discussed with C. M. Lamb, who was at that time general manager of the defendant (but just when is left uncertain by the testimony), and he assented to the arrangement. Pursuant to the agreement made, plaintiff moved his office from the city of Boston to Detroit, and in every way carried out the terms of his agreement, and during the first year sold more than 2,500 shields on orders accepted by defendant, so that the agreement was extended for the year 1913.

Immediately after plaintiff entered into the rider contract, he began the sale of shields, and on or about January 9, 1912, defendant opened an account with plaintiff on which they credited him with commissions due on windshields sold, and charged him with cash paid to him by reason of said commissions. It ap-

pears, however, that this was done for convenience, and at the request of Conover & Robison.    An employee of defendant, called as an adverse witness, testified:

"In the years 1911, 1912 and 1913 I was occupying the same position with the Page Company that I do now, as head of the auditing department.    During 1912 and 1913 checks for commissions were sent direct to Mr. Daniels as they became due.    Checks were sent to Smalley Daniels direct at the request of Conover & Robinson, as a matter of convenience to save them holding an office some place.    If we sent the checks to them, they would have to turn around and send them to Mr. Daniels, or whoever they did business with, and they asked us to do their business in that respect."

Referring to the account, the witness testified:

"Then this was closed by throwing it all to the proper account of Conover & Robinson.    All debits and all credits were then transferred back to the parent account of Conover & Robinson where it belonged."

Plaintiff continued to sell shields under his contract during the years 1912 and 1913, until defendant claimed that plaintiff's rights-under the contract had expired, by reason of the fact that the contract between defendant and Conover & Robinson had been ended.    During all of this time plaintiff had been conducting all correspondence relating to the sale of shields with defendant, and had been receiving his pay for commissions from defendant, according to the terms of the rider contract.

In the summer of 1913 plaintiff was at the offices of defendant, and then attempted to adjust the balance due him on commissions, at which time defendant submitted to plaintiff a statement which showed a balance of $148 due plaintiff on commission account. Plaintiff claimed a larger amount was due him, and,

therefore, no settlement was made. In 1913 defendant, according to plaintiff's testimony, claimed that plaintiff's contract was not in effect after July, because Conover & Robinson could not make a contract with plaintiff for a longer period of time than defendant's contract was in effect with Conover & Robinson, and that "that relation was out at that time; that they had canceled it." The terms of the contract between defendant and Conover & Robinson do not appear in the record.

On April 20, 1914, Conover & Robinson sent a letter to the defendant to the following effect:

"You are hereby notified that any and all authority ever given you by the undersigned, to pay direct to Mr. Smalley Daniels, any commissions earned, or claimed to be earned by him on account of the sale of Boreas windshields is hereby expressly withdrawn, and you will please account to us for all commissions on sales, as per terms of contract between yourselves and the undersigned."

To this letter defendant, on April 23, 1914, replied as follows:

"We are in receipt of your formal withdrawal of authority to pay commissions claimed by Mr. Smalley Daniels on sales of Boreas windshields direct, and your instructions to deal with you personally in this matter, as contemplated in the contract between us. We recognize your entire right to take this action, and shall be governed accordingly, but wish to inform you that inasmuch as there exists a considerable amount of shortages in the consignment accounts had by us with Mr. Daniels, which consignments were guaranteed by yourselves, and inasmuch as your withdrawal of right to deal direct with Mr. Daniels, deprives us of any opportunity to recoup these charges from any commissions which might otherwise be owing Mr. Daniels on account of such commissions, we shall hold you responsible for such shortages as guarantors of those accounts, and shall look to you for an adjustment of them."

At the trial it was the claim of the plaintiff that he was entitled to recover from defendant commissions on all shields sold by defendant during the years 1912 and 1913, and that defendant had agreed to pay these commissions to plaintiff.   On the other hand it was the claim of the defendant that the relation of debtor and creditor did not exist between plaintiff and defendant, and that defendant had no contract relation whatever with plaintiff.   Error is assigned on the action of the trial court in setting aside the verdict of the jury and entering a judgment for defendant, and in refusing to enter judgment for plaintiff on the verdict.

The salient question in the case is whether or not there was a contract relation between plaintiff and defendant, or whether the relation of debtor and creditor existed between the parties.   Under the contracts, the debt, if any, owing to plaintiff was the debt of Conover & Robinson, the parties thereto.   We have carefully read and considered the record, and have searched in vain to find any evidence showing contract relations between the plaintiff and defendant, or any promise or agreement on the part of defendant to pay the plaintiff any money.   Giving the plaintiff's evidence full probative effect, it falls far short of showing any contract relations on his part with the defendant by contract, either express or implied; and we are unable to find that the relation of debtor and creditor existed between them.

The defendant was not a party to either contract, and conceding, what does not appear, that Mr. Lamb had authority to consent, orally, to the terms of the rider agreement, such consent did not create the relationship of debtor and creditor between the plaintiff and defendant.   That agreement provided for the extending of the original agreement; that further extension should be made upon the making of certain

specified sales, with an increase in the rate of commission, and a change in the manner of payment. (See last clause of rider contract.)   All of these things were agreed to be done by the plaintiff and Conover & Robinson. Defendant had no part in the arrangement other than to consent that it would pay the commissions which it owed under its contract with Conover & Robinson direct to the plaintiff instead of to Conover & Robinson, for convenience of the parties. As is said by counsel for defendant:

"It was a mere mechanical act, no benefit was to be derived by it one way or another, and its sole authority to pay commissions to plaintiff was to be derived from Conover & Robinson, created by them and terminable by them."

The defendant was not interested in the Conover & Robinson contract with the plaintiff.   The defendant was interested in its own contract with Conover & Robinson.   The burden was on Conover & Robinson to perform their contract with defendant, to its satisfaction, whether plaintiff carried out his contract with Conover & Robinson or not.   The conduct of the parties negatives the claim of the plaintiff.   Had plaintiff, at the time, intended to look to defendant for payment he would have insisted on something more than a mere verbal assent, so careful was he to have his contracts in writing.

It is the claim of the plaintiff that the rider agreement, and the assent, amounted to a novation.   We do not agree with this claim.   The essential elements of a novation are not present.   The decisions of this court upon the subject of novation are numerous. Many of the earlier cases are cited in *Harrington-Wiard Co.* v. *Manufacturing Co.*, 166 Mich. 276, 287. See, also, *Gillett* v. *Ivory*, 173 Mich. 444; *Detroit Postage Stamp Service Co.* v. *Schermack*, 179 Mich. 266, 274 (Ann. Cas. 1915D, 287).

We find no evidence to show that defendant consented to be substituted as a debtor of plaintiff in the place and stead of Conover & Robinson, and there was no extinction of the obligation it owed to Conover & Robinson under its contract with them, nor were their relations changed.    There is no evidence that the plaintiff ever released Conover & Robinson from their contract relations with him.    We repeat that the essential elements of a novation are wanting here.    The subsequent conduct and correspondence of the parties and of Conover & Robinson are all inconsistent with a novation or a new contract.    We are constrained to hold that the plaintiff has failed to make out a case of liability of defendant, and that the court below made a proper disposition of the case.

The judgment of the circuit court is, therefore, affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, and SHARPE, JJ., concurred.    BIRD, J., did not sit.