OAKLAND COUNTY *v.* ALLEN.

DEPOSITARIES—BONDS—SURETIES—EQUALLY DIVIDED COURT.
   Finding of trial court of nonliability on part of sureties on
      bond of bank which had been designated as depository for
      county funds. after another bank had assumed liabilities of
      designated depository, county presented claim against re-
      ceiver of second bank after it had failed and was paid part
      of claim, is affirmed by an equally divided court (1 Comp.
      Laws 1929, §§ 1193–1202).

Appeal from Oakland; Doty (Frank L.), J. Submitted June 11, 1940. (Docket No. 36, Calendar No. 41,164.) Decided October 7, 1940.

Assumpsit by County of Oakland, a municipal corporation, against Harry Allen and others to recover on surety bond. Judgment for defendants. Plaintiff appeals. Affirmed by an equally divided court.

*Charles L. Wilson,* Prosecuting Attorney, and *Harry J. Merritt,* Corporation Counsel, for plaintiff.

*Pelton & McGee (Joseph H. Clark* and *Clark, Klein, Brucker & Waples,* of counsel, for defendant James Vernor, Jr., and *Race, Haass & Allen,* of counsel, for other defendants), for defendants and appellees.

NORTH, J. On May 8, 1931, plaintiff had $128,000 on deposit in the Birmingham Savings Bank. Defendants, being directors of the bank, were sureties

---

Discharge of sureties by release or accord and satisfaction, see 1 Restatement, Contracts, § 121; by novation, see 2 Restatement, Contracts, § 424 *et seq.*, and particularly § 428.

on a $65,000 bond given by the bank to secure repayment of plaintiff's deposit of public funds as required by statute. 1 Comp. Laws 1929, §§ 1193–1202 (Stat. Ann. §§ 5.531–5.540). On December 16, 1931, the Birmingham Savings Bank entered into an agreement for the liquidation of its affairs by the First National Bank of Birmingham. Notice of this transaction was sent to all the Savings Bank depositors; and on December 28, 1931, the transaction between the two banks was approved by more than two-thirds of the capital stock of the Savings Bank. 3 Comp. Laws 1929, § 11953 (Stat. Ann. § 23.58). Thereafter one of the certificates of deposit for $30,000 evidencing a part of plaintiff's deposit in the Savings Bank was presented to and cashed by the First National Bank, payment being made in the following manner: on July 9, 1932, cash in the amount of $10,886.50 was transferred into plaintiff's checking account in the First National Bank and a new certificate of deposit issued by the First National Bank for the balance, which latter certificate in the amount of $19,113.50 was paid in cash to plaintiff by the First National Bank November 3, 1932. The First National Bank accepted the surrender of all other certificates of deposit held by plaintiff in the Savings Bank and in lieu thereof issued to plaintiff the First National Bank's certificates of deposit in the amount of the surrendered certificates. When plaintiff's certificates of deposit in the Savings Bank were surrendered to the First National Bank they were indorsed by the county treasurer: "Pay to the order of First National Bank, Birmingham," and upon being received by the National Bank each certificate was stamped "Paid." The newly-issued certificates varied in terms somewhat from those plaintiff had previously held in the Savings Bank and bore a higher rate of interest. On numerous subsequent occasions plain-

tiff, acting through the county treasurer, requested the First National Bank to reissue certificates of deposit and remit accrued interest. The foregoing transactions occurred with knowledge on the part of plaintiff that incident to the National Bank's undertaking to liquidate the affairs of the Savings Bank the former had assumed all liabilities of the latter. The proposal by the First National Bank which resulted in the liquidation agreement contained the following:

"Pursuant to the request of your bank for assistance, this bank (First National Bank) herewith, agrees to assume and perform all of the deposits and other liabilities (except liabilities to your stockholders) of your bank in consideration of the assignment, conveyance and transfer by your bank to this bank of all of the assets of your bank of whatever kind and nature, except as hereinafter set forth."

The notice which plaintiff, as a depositor in the Savings Bank, received stated:

"The directors and stockholders of the Birmingham Savings Bank have felt, owing to their inability properly to offer the necessary accommodations to their loyal depositors, the needs of depositors, as well as the community as a whole will be best served in the *sale of its assets and liabilities* to the First National Bank of Birmingham."

On February 14, 1933, the First National Bank suspended business and later a receiver was appointed. Plaintiff filed with the receiver its claim for $254,338.72; and incident to making this claim plaintiff asserted under oath that the stated amount was owing to it by the First National Bank. The above claim included $98,593.75 evidenced by First National Bank certificates of deposit which that bank had issued to plaintiff in exchange for certificates of deposit formerly held by plaintiff in the

Birmingham Savings Bank. Subsequently and in the course of the First National Bank receivership proceedings plaintiff received three dividends, and by these dividends plaintiff was repaid 55 per cent. of its claim against the receivership assets.

In February, 1937, plaintiff instituted the present suit against the defendants as sureties on the depository bond of the Birmingham Savings Bank. The defense urged is that by reason of the transactions hereinbefore noted there was novation which resulted in the satisfaction of the original obligation of the Birmingham Savings Bank and thereby defendants as sureties on a depository bond of that bank were released. On trial without a jury the circuit judge held with defendants and entered a judgment of no cause of action. Plaintiff has appealed.

The decisive issue was whether there was novation. The trial judge based his determination on a finding that plaintiff's knowledge and course of conduct subsequent to the transfer of the assets of the Savings Bank to the First National Bank and the concurrent assumption by the latter of the former's liabilities established novation.

There is no occasion for repeating herein the essential legal elements of novation. They are definitely reasserted in *George Realty Co.* v. *Gulf Refining Co.*, 275 Mich. 442; and that case is authority for the following proposition:

"Novation need not be in writing or expressed but may be implied from facts and circumstances.

" 'It is a well-settled principle that the assent to, and acceptance of, the terms of a novation need not be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter.' 46 C. J. p. 580."

The controlling issue on this appeal is whether the circuit judge was right in holding that plaintiff's course of conduct resulted in novation. While, as above stated, the transaction between these banks was one looking to the liquidation of the Savings Bank, nonetheless all parties concerned (including plaintiff as one of the Savings Bank's depositors) knew that this was to be accomplished through a sale to the First National Bank by the Savings Bank of its assets and the assumption of the latter's liabilities by the First National Bank. Acquiescing in this plan plaintiff continued over a period of many months to do business with the National Bank and so continued until the bank closed its doors, February 14, 1933. In the meantime plaintiff not only demanded interest payments and made renewals of certain of its certificates of deposit in the First National Bank, but plaintiff withdrew from the funds of that bank $30,000 in payment of one of its certificates of deposit which originally was an obligation of the Savings Bank. And after the First National Bank closed plaintiff filed a sworn claim in its receivership proceedings which included the amount of plaintiff's former certificates of deposit in the Savings Bank; and on the basis of allowance of its claim plaintiff through receivership dividends received from the assets of the First National Bank 55 per cent. of its total claim of $254,338.72, of which amount $98,593.75 arose from the certificate of deposit obligations assumed by the First National Bank incident to its purchase of the assets of the Savings Bank. It is worthy of note that as late as May 20, 1938, plaintiff accepted from the receiver of the First National Bank a dividend of $9,973.58 to apply on that portion of plaintiff's claim which had its inception in certificates of deposit issued to

plaintiff by the Savings Bank prior to December 16, 1931, at which time the First National Bank bought the assets of the Savings Bank and assumed its liabilities. In other words, plaintiff accepted the above-noted dividend from the First National Bank more than six years after that bank had assumed the liabilities of the Savings Bank. We are mindful that this suit was instituted in February 1937, which was prior to the payment of the above dividend; but it was subsequent to payment of the dividend that the issue was framed in the instant case and the case later tried. Even the next earlier dividend declared by the receiver was paid to and received by plaintiff in the amount of $19,947.16 as late as October 10, 1935. Plaintiff's uniform course of conduct over all of this extended period is wholly inconsistent with any other conclusion than that it had accepted the First National Bank as its debtor responsible for the payment of the obligations here in question. To hold otherwise is to approve a course of conduct on plaintiff's part which was wholly unjustifiable and highly prejudicial to the other creditors of the First National Bank and to the defendants herein. Plaintiff's course of conduct in the particulars hereinbefore noted estops it from now assuming an inconsistent position. Further, the necessary conclusion to be reached from this record is that more than five years before instituting this suit and thereby making its demand upon the defendant sureties, plaintiff had accepted in lieu of its certificates of deposit in the Savings Bank the certificates of deposit issued to plaintiff by the First National Bank; and plaintiff knew the First National Bank was so acting incident to the agreement for a valid consideration to assume and discharge the obligations of the Savings Bank.

"Payment is an affirmative defense. *Kay* v. *County of Wayne,* 274 Mich. 90. Payment, in point of law, may be accomplished by the creditor accepting, as payee named therein, obligations of his debtor's debtor in satisfaction. In the absence of an express agreement as to satisfaction, the taking of the direct obligation of such third party, *prima facie,* by substitution or specie of novation, extinguishes the obligation of the original debtor. This *prima facie* presumption departs when in conflict with credible evidence." *Riber* v. *Morris,* 279 Mich. 344, 348.

Our review of this record discloses no credible testimony which tends to overcome the fair inference from facts established or the presumption that plaintiff accepted the obligations of the First National Bank in lieu of the obligations which plaintiff theretofore held against the Savings Bank. Under this record the trial judge was entirely correct in holding there was novation. Our conclusion in this particular is in accord with *Gillett* v. *Ivory,* 173 Mich. 444; *Keppen* v. *Rice,* 257 Mich. 299; *Chicago Boulevard Land Co.* v. *Nutten,* 268 Mich. 541. Both in its facts and legal aspect the *Gillett Case* is strikingly similar to the instant case.

Appellant relies much upon *City National Bank* v. *Fuller* (C. C. A.), 52 Fed. (2d) 870 (79 A. L. R. 71). We think the cited authority is clearly distinguishable in its facts from the case under consideration. First it may be noted that in the *Fuller Case* the course of plaintiff's conduct relied upon by defendant to establish novation extended over a period of only 24 days before the bank sought to be charged through novation ceased doing business, whereas in the instant case it extended over a period of years. A further distinguishing feature is indicated in that

portion of the opinion in the ·*Fuller Case* which reads: "It is to be noted in the case at bar that the certificate of deposit was not surrendered to the original debtor as was the case with the note in *Klinkoosten* v. *Mundt* (36 S. D. 595 [156 N. W. 85, L. R. A. 1918B, 111]), but was surrendered to the receiver of the First National, who was not an agent of the debtor. We do not think it can be assumed that plaintiff intended to surrender his rights against the City National by the surrender of possession of the certificate. It was merely evidence of the debt." But in the instant case plaintiff did surrender its certificates of deposit to the First National Bank, knowing that this bank had assumed these obligations. Further, the First National Bank was then functioning in the regular course of business and continued for months. Unquestionably plaintiff received from that bank its certificates of deposit as binding obligations evidencing a debt obligation which plaintiff then accepted in lieu of the former obligation of the Savings Bank. Thereafter over a period of years plaintiff continued a course of action consistent only with the conclusion that it accepted the First National Bank as its debtor in lieu of the Savings Bank. No such course of conduct is disclosed in the case of *City National Bank* v. *Fuller, supra,* and we think it not at all controlling of the instant case.

Appellant stresses the fact it is provided in the bond on which defendants were sureties that the bond could not be cancelled except by "resolution of the board of auditors;" and since no such action was taken, appellant contends "the possibility of novation was precluded" and the liability of the defendant's sureties still continues. The primary controlling condition of the bond was: "and if said (Savings) bank shall in like manner * * * repay on like demand any moneys which may be deposited by the county of Oakland in said bank * * * then this

obligation is to be void." It is too plain for argument that had the Savings Bank paid to the county the money due on its certificates of deposit, the contingent liability of the sureties would have been terminated, regardless of any action on the part of the board of auditors. If, as we hold, there was novation, that was tantamount to payment and the sureties were thereby discharged. As we review the facts presented by this record, the legal aspect of the controversy is no different than it would have been had the plaintiff immediately after the liquidation agreement was consummated demanded of and received from the First National Bank the money payable to the county on its certificates of deposit in the Savings Bank, and thereafter or simultaneously the county had turned its funds over to the First National Bank and had received therefor as evidence of its indebtedness to the county certificates of deposit of that bank.

There is no merit to appellant's contention that the county treasurer could not by his acts in the particulars herein noted bind the county. Municipal corporations, like other corporations, act only through their officers and agents. In the instant case the acts of the county treasurer were within the scope of his official duties. The county has accepted and retained the benefits of his course of conduct in having been paid by the First National Bank $30,000 on one of the county's certificates of deposit and also by having been paid thousands of dollars by the receiver of the First National Bank in partial satisfaction of the other certificates of deposit held by the county. Under such facts plaintiff cannot disavow the acts of its official agent.

The judgment entered in the circuit court is affirmed. Costs to appellees.

BUSHNELL, C. J., and BOYLES and McALLISTER, JJ., concurred with NORTH, J.

SHARPE, J.   This is an action in assumpsit brought by the county of Oakland, a municipal corporation, against the directors of the Birmingham Savings Bank to recover on a depository bond given by the Birmingham Savings Bank as principal and its directors as sureties to protect plaintiff's deposit in the Birmingham Savings Bank.

On May 8, 1931, plaintiff had on deposit in the above bank approximately $128,000.   The bank was the designated depository of the county funds.   On or about March 24, 1931, the Oakland county board of auditors requested the bank to furnish additional security to the extent of $65,000 to qualify under Act No. 99, Pub. Acts 1909, as amended (1 Comp. Laws 1929, §§ 1193–1202 [Stat. Ann. §§ 5.531–5.540]), as a depository of public funds.   On May 8, 1931, the bond was furnished and the defendants who were all of the directors of the bank signed the bond as sureties.   On December 16, 1931, the above bank was experiencing financial difficulties and it entered into an agreement with the First National Bank, Birmingham, to effect an orderly liquidation of its affairs.   On December 28, 1931, the stockholders of the Birmingham Savings Bank by more than two-thirds majority approved the proposed transaction between the two banks.   Notice of the transaction was sent to all depositors by the Birmingham Savings Bank on December 17, 1931.   Between January 5, 1932, and July 20, 1932, the First National Bank cashed one of the certificates of deposit of the Birmingham Savings Bank held by plaintiff and accepted the surrender of all of the other certificates of deposit of the Birmingham Savings Bank held by plaintiff and issued to plaintiff its own certificates of deposit for the amount of the surrendered cer-

tificates of deposit of the Birmingham Savings Bank. February 14, 1933, the First National Bank was closed and did not reopen. On or about October 3, 1935, plaintiff filed its claim with the receiver of the First National Bank for the sum of $254,338.72 and alleged in the claim that said amount was owing plaintiff by the First National Bank. This amount included $98,593.75 evidenced by First National Bank certificates of deposit issued by it to plaintiff in exchange for the Birmingham Savings Bank certificates above mentioned. Subsequently, plaintiff received three dividends from the receiver of the First National Bank.

The trial court after hearing the evidence entered a judgment of no cause of action; and found as a matter of law that there was a novation because:

"1. The First National Bank assumed the liabilities of the Birmingham Savings Bank and the plaintiff knew this.

"2. The plaintiff transacted business with the First National Bank, surrendered to it the Birmingham Savings Bank certificates, and accepted in lieu thereof the First National Bank certificates which were not in the same form and which bore a greater interest rate.

"3. They filed claim against the receiver of the First National Bank for all moneys including those formerly in the Birmingham Savings Bank.

"4. By the plaintiff's acts and deeds, it is evident to this court that the Birmingham Savings Bank, and consequently the sureties, were released from all liabilities to plaintiff."

Plaintiff appeals. The question involved in this case is one of novation. Defendants contend that there was a novation of the obligations of the Birmingham Savings Bank secured by the bond upon

which action in this case was brought. The principles of novation are not in dispute.

In *George Realty Co.* v. *Gulf Refining Co.,* 275 Mich. 442, 447, this court said:

"In the case of *Harrington-Wiard Co.* v. *Blomstrom Manfg. Co.,* 166 Mich. 276, 286, we said:

" 'It is a well-established rule that the necessary legal elements to establish novation are: (1) Parties capable of contracting; (2) a valid prior obligation to be displaced; (3) the consent of all parties to the substitution, based upon sufficient consideration; and (4) lastly, the extinction of the old obligation and the creation of a valid new one. All of these elements must be established by the evidence; not necessarily by direct evidence, but by evidence of such facts and circumstances as logically lead one to the conclusion that a new contract has been made.'

"Novation need not be in writing or expressed but may be implied from facts and circumstances.

" 'It is a well-settled principle that the assent to, and acceptance of the terms of a novation need not be shown by express words to that effect, but the same may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter.' 46 C. J. p. 580.

"See, also, *Gillett* v. *Ivory,* 173 Mich. 444; *Keppen* v. *Rice,* 257 Mich. 299; *Frank C. VanDyke & Co.* v. *A. J. Stuart Land Co.,* 245 Mich. 119; *Mulgrew* v. *Cocharen,* 96 Mich. 422; *Chicago Boulevard Land Co.* v. *Nutten,* 268 Mich. 541."

Defendants rely upon *Gillett* v. *Ivory, supra,* to support their claim of novation. In that case the plaintiff deposited $400 in the bank owned by the defendants. Eight days later the defendants sold their interest in the bank to Hagle and Varran who continued the business under the same name and assumed all of the obligations as a part of the purchase price. About a month later plaintiff learned of the sale. Approximately five months later, plaintiff demanded payment from Hagle and Varran and the bank closed shortly thereafter. Plaintiff filed a claim with the receiver and subsequently received $142 in dividends. Plaintiff brought suit against

the defendants who were the owners of the bank at the time of the original deposit. We there held that there had been novation because the facts established consent to the substitution; and that plaintiff was estopped to deny the substitution of debtors by his actions.

The acceptance of the new debtor alone does not necessarily discharge the old debtor, see *Epworth Assembly* v. *Railway,* 236 Mich. 565, but is a circumstance to be considered, *Chicago Boulevard Land Co.* v. *Nutten, supra.* The renewal of a note by a new debtor does not destroy the old obligation, *Guardian Depositors Corp.* v. *Currie,* 292 Mich. 549.

In 20 R. C. L. p. 365, it is said:

"The rule applicable to promissory notes applies to certificates of deposit, and therefore the renewal of bank certificates does not operate as a novation of the original indebtedness."

In *Riber* v. *Morris* (syllabus), 279 Mich. 344, we held:

"In the absence of an express agreement as to satisfaction, the taking of the direct obligation of such third party, *prima facie,* by substitution or specie of novation, extinguishes the obligation of the original debtor but such *prima facie* presumption departs when in conflict with credible evidence."

In the case at bar the bond signed by the defendants contained the following language:

"This bond shall continue in full force and effect from this date forward unless revoked by resolution of the board of auditors, and until all moneys now on deposit shall have been paid in accordance with the terms of said certificates of deposit."

It is conceded that the board of auditors never passed or adopted any resolution releasing defendants.

There must be a legal discharge of sureties. *Lawrence* v. *American Surety Co.*, 263 Mich. 586 * (88 A. L. R. 535). The trial court made the following finding of facts:

"On several occasions the Oakland county treasurer mailed certificates to the First National Bank requesting that bank to reissue the certificates and send the interest then due to the treasurer. In some instances, the interest rate borne by the certificates issued by the First National Bank exceeded the interest rate borne by the former certificates issued by the Birmingham Savings Bank. The wording in the First National Bank certificates differed in some respects from the wording in the Birmingham Savings Bank certificates.

"Subsequent to the failure of the First National Bank to reopen after the banking holiday, February 14, 1933, Oakland county filed claim with the receiver of the First National Bank for all moneys due the county, including the balance of funds traceable to the Birmingham Savings Bank, and has received on such claim, three different dividends, totalling 55 per cent. of the county's claim."

In the case at bar plaintiff had knowledge of the arrangements between the two banks and the county treasurer of Oakland county accepted dividends upon the new certificates, but knowledge and acceptance of dividends are not sufficient to call into being the doctrine of novation. Nor do we find anything in the record giving the county treasurer power and authority to discharge the defendants from their liability upon the bond. Such authority, where public moneys are involved, must be clear and convincing. In our opinion the record does not sustain a finding of novation.

The judgment should be reversed and a judgment should be entered in the circuit court for the amount of the obligation. Plaintiff should recover costs.

---

* Rehearing denied, 264 Mich. 516.—REPORTER.

CHANDLER, J., and BUTZEL, J., concurred with SHARPE, J.

WIEST, J. I concur in the opinion of Mr. Justice SHARPE.

The bond pledged payment. This prevented bar by novation. Defendants' obligation continues until payment, with right of credit for moneys received by plaintiff from the liquidating bank.

Defendants plead estoppel by novation without satisfaction of their obligation.

It was plaintiff's duty to collect where it could and thus protect defendants and this duty performed did not operate as an estoppel to the release of defendants.