[File No. 6605.]

THE COUNTY OF HETTINGER, a Municipal Corporation of North Dakota, Appellant, v. E. H. TROUSDALE and Elizabeth Trousdale, Executrix of the Last Will of R. E. Trousdale, Deceased, Respondents.

(5 NW(2d) 417.)

Opinion filed August 5, 1942.   Rehearing denied September 5, 1942.

*R. J. Bloedau,* State's Attorney, and *W. C. Crawford,* for appellant.
*J. K. Murray* and *John F. Sullivan,* for respondents.

MORRIS, J.   This case has previously been considered by this court and an opinion written which appears in 69 ND 505, 288 NW 25. The case was remanded to the district court with instructions to permit additional testimony to be presented on all issues by both sides.   The district court was directed to make further findings and to certify the additional record to this court together with the one that was remanded. Our directions have been complied with.   Both the old and new records are back to this court for further proceedings.   This opinion, therefore, is a sequel to the one above cited.

We resume the consideration of this case without a repetition of all the facts set out in the former opinion.   The case was reargued upon the complete record now before us.   Supplemental briefs have been filed.   The trial court has filed an extensive memorandum opinion as part of the new record.   One of the defendants, R. E. Trousdale, died

since the original trial and upon the supplemental trial the executrix of his will was substituted as a party defendant.

The major defense is that the principle on the surety bonds which are the basis of this action, through its receiver, has paid all deposits in full and that the defendants' liability as sureties has been terminated by the payment. The contention that the county was paid in full by the receiver and the sureties consequently discharged is based upon certain transactions involving the board of county commissioners, the county treasurer, S. J. Boyd, the receiver of the closed bank and the sureties. At the time of these transactions a dividend of 75% on all claims had been paid by the receiver of the First National Bank of Mott. A plan was sought whereby the remaining assets of the defunct bank could be sold by the receiver to a depositors' committee and the receivership closed, thereby stopping receivership expense and also terminating liability of stockholders for assessments. A depositors' committee was formed consisting of R. E. Trousdale and two other interested parties. The receiver secured an order of the district court of Hettinger·county authorizing him to sell to the depositors' committee the remaining assets except cash for the sum of $38,444.35. This sum was the amount necessary to permit the receiver to pay the final dividend of 25% on all claims. In order to secure funds to make the purchase from the receiver the depositors' committee borrowed the above sum on their personal note from the Northwestern National Bank of Minneapolis. This note is dated June 24, 1935. Before furnishing the money the Minneapolis bank required the endorsements of R. E. Trousdale and E. H. Trousdale which appear on the back of the note now in evidence. The Minneapolis bank on the same date notified the First National Bank in Mott (the new bank) that the depositors' committee had been credited with the proceeds of the note. This money was placed at the disposal of the receiver of the defunct bank through the medium of a draft. Thus, the receiver acquired enough cash to permit him to pay the final dividend of 25%.

On June 26, 1935, Mr. Gifford, the deputy receiver, notified S. J. Boyd, Treasurer of Hettinger county, that he had received from the Comptroller of the Currency final dividend checks for distribution to the depositors and requested the treasurer to bring proofs of claim to

the receiver's office. There is considerable dispute in the testimony as to what occurred in the receiver's office and in the bank. The trial court in his memorandum opinion sets forth what we believe to be the correct version of what transpired.

"Thereupon Mr. Boyd went to the office of the receiver, presented his proofs of claim on behalf of Hettinger County, and Mr. Gifford then handed to the treasurer, Mr. Boyd, checks drawn in favor of Hettinger County aggregating $36,522.42, and delivered said checks to said Boyd. These final dividend checks of 25% are exhibits B-7, C-6, D-7, E-7, F-7, G-7, H-8, I-6 and J-6. On delivery of the above checks to Mr. Boyd, he signed and delivered to the receiver receipts therefor, which are exhibits B-10, C-9, D-10, E-10, F-10, G-10, H-11, I-9 and J-9. Boyd thereupon left the receiver's office and went alone to the office of the First National Bank in Mott, which was in the same building. There he met Mr. Mitchell, cashier of the bank. Mr. Boyd presented the 25% dividend checks issued by the Comptroller of the Currency to the cashier, Mitchell, and stated that he wanted drafts for three-fifths of the amount of the 25% dividend checks, and that the depositors' committee was to be given credit for the remaining two-fifths of said checks. Mitchell followed the instructions of Boyd and gave him drafts drawn on the Northwestern National Bank of Minneapolis aggregating $21,-913.45, or three-fifths of the 25% dividend checks, which drafts are exhibits 57 to 65 of the record. Mitchell then made out a deposit slip, which is exhibit L of the record, in his own handwriting, crediting the depositors' committee with two-fifths of the 25% dividend checks, or $14,608.97, and placed said sum to the credit of the depositors' committee on the books of the bank. Mr. Mitchell then went to Mr. Trousdale's office and secured from him trust certificates, being exhibits 48 to 56, representing 10% of the county's claim against the receiver, which also equalled two-fifths of the 25% dividend checks, or $14,608.97, and delivered said trust certificates to Mr. Boyd, who received them and went away and kept them ever since. The drafts, exhibits 57 to 65, which Mr. Boyd received from the cashier, Mr. Mitchell, were deposited to the credit of the county in the Bank of North Dakota and were cashed in due course."

., These facts the defendants strenuously contend show that the county

through its treasurer, Mr. Boyd, received checks for the full amount of the final dividend and that the county was, therefore, fully paid as a depositor. This argument would be persuasive if it were possible to isolate the transaction with the county treasurer above described from all other negotiations and transactions connected therewith. However, the transactions of Mr. Boyd, the treasurer, constituted only the consummation of a plan and the accomplishment of a purpose for which interested parties including the sureties who were also stockholders and officers of the defunct bank had been seeking for some months.

On December 10, 1934, the county commissioners of Hettinger county passed a resolution in which was outlined a plan of settlement between the receiver and the depositors which in part provided:

"Whereas the Receiver has entered into a plan with the private depositors of the said First National Bank of Mott, N. Dak. (the old bank) indirectly with the Comptroller of the Currency of the United States to the effect that said bank, through its receiver shall pay all deposits or claims, as allowed by the Conservator, or his successor, the receiver, having a balance of $100.00 and less, in full, and all other claimants a dividend to the extent of 15% of the claims, making a total payment of 90%, and that the depositors and creditors release the bank as a corporation from further liability and the receiver be discharged and that the depositors have a first lien on all remaining assets of the old bank in proportion to their respective claims as allowed and already approved by the Conservator or Receiver, such claims being evidenced by Receiver's Certificates, on the remaining assets of said bank, and whereas the Board of County Commissioners after due consideration determines and concludes that it is for the best interest of the county to join in with the private depositors on said plan,

"It is understood that the services of the receiver and all expenses such as salary, etc., of the receiver, terminate, and that the remaining assets will be liquidated by a committee to be designated by the depositors, such committee to act without compensation. The first duty of the committee will be to issue trust certificates or other instruments of evidence indicating the balance of 10% due on the original claims. Such certificates to bear interest at the rate of 3% per annum, and are to be payable in installments at the choice of the committee.

"It is understood that when all outstanding trust certificates have been paid in full, the then remaining assets of the trust, if any, shall be returned to the stockholders of the First National Bank of Mott, N. Dak.

"Now, therefore, be it resolved that Hettinger County join in with the private depositors on the plan aforesaid and accept its pro rata share on its claims, releasing the First National Bank of Mott, N. Dak., namely, the old bank, and the receiver, and said county have a lien with the other depositors or creditors on all the remaining assets of said bank.

"It is further provided that this Resolution and release of the bank shall not in any shape, form or manner constitute or operate as a release of any of the sureties of the depository bonds, for the remainder of such deposits. Provided that the sureties on the Depository Bonds consent to this resolution."

On December 13, 1934, the defendants filed a written consent to this resolution. The language of this consent is set out in our former opinion. The plan embraced in the foregoing resolution was rejected by the receiver because he was not permitted to close the receivership with assets on hand and without paying the depositors in full. The defendants contend that the plan outlined in this resolution was never carried out because the resolution contemplated a settlement with the receiver for ninety cents on the dollar whereas by the settlement that was actually made the receiver paid all claims in full. It is further argued that the transaction with the Northwestern National Bank of Minneapolis which resulted in final payment being made by the receiver to all depositors was not contemplated by the resolution.

It is clear that the Trousdales were parties to not only the plan outlined in the resolution of the board of county commissioners and to which they gave their written assent but also to the various transactions that occurred after the adoption of the resolution and which led up to the final settlement made by the receiver with the depositors. It is true as the defendants contend that the original plan did not contemplate the borrowing of a large sum of money by the depositors' committee. That, however, was but an incident in effecting the result contemplated by the resolution. The Trousdales guaranteed the note to the Northwestern National Bank of Minneapolis and until that note was paid became personally liable for the full amount thereof. The

proceeds of the note enabled the depositors' committee to buy the remaining assets from the receiver. It enabled the receiver to pay the final dividend and thus close up the receiver's trust. The Trousdales were relieved of financial liability for stockholders' assessments and received the personal satisfaction of having the receivership of the institution, of which they were former officers, disposed of in a manner satisfactory to the depositors. The loan to the depositors' committee brought about the net result contemplated by the resolution of the county commissioners. The county received 90% of its deposit claims against the defunct bank. The remaining assets are in the hands of the depositors' committee. The county holds trust certificates against these assets to the extent of the remaining 10% of the county deposits. This is the result sought by the resolution to which the defendants consented. By that resolution and their consent it was contemplated that the liability of the sureties should continue until the full amount of the bonded deposits had been paid. It contemplated actual payment into the county treasury. The county treasurer, for a few brief minutes, had in his possession in the bank building comptroller's checks for the full amount but the conclusion is inescapable that that possession was not for the purpose of placing the full proceeds in the county treasury but was for the purpose of carrying out the prearranged plan by which the remaining assets of the defunct bank were to be turned over to the depositors' committee and trust certificates, not cash, would go to the county for the remaining 10% of the county deposits.

The sureties urge the proposition that the treasurer of Hettinger county actually had in his possession checks issued by the comptroller of the currency for the full amount of the final dividend and that the county was thus paid in full. It is manifest from the record that it was never the intention of either the sureties or the officers of the county that these checks should be cashed and the full amount placed in the county treasury. The situation is not unlike that in Fremont County v. Fremont County Bank, 145 Iowa 8, 123 NW 782, Ann Cas 1912A 1220, wherein money that had been deposited by the county in a bank was taken to the county treasurer's office for the purpose of being counted and checked with the treasurer's books and the books of the bank. It

was held that the money was taken to the county treasury for the purpose of being counted without any intention that it would pass to the treasurer as payment of the amount due the county. The court said: "The authorities seem to agree that to constitute payment the money or other thing must pass from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose."

The county treasurer went directly from the receiver's office to the First National Bank in Mott, in the same building, as soon as he received the final dividend checks. In the bank he received drafts for three-fifths of the amount of those checks. The proceeds of these drafts ultimately went into the county treasury. The other two-fifths was deposited to the credit of the depositors' committee and the proceeds immediately used to pay the note that the Trousdales had guaranteed to the Northwestern National Bank of Minneapolis. The proceeds of that note had served its purpose within the space of a few days. The result sought by both the county and the sureties had been obtained. The receiver was without authority to close his trust until the depositors had been paid in full in so far as his records had been concerned. In order that this requirment be technically complied with the depositors' committee, with the personal guarantee of the Trousdales, borrowed the necessary funds from the Northwestern National Bank of Minneapolis. These funds were used to purchase the remaining assets against which trust certificates were issued by the depositors' committee to the extent of 10% of the deposits. The borrowed funds thus went to the receiver who caused checks to be issued for the final dividend. The borrowed funds represented two-fifths of this dividend. The county treasurer by immediately cashing the county's dividend checks returned the funds to the depositors' committee who in turn paid off the note to the Minneapolis bank and thus relieved the signers and guarantors of that note of their liability. The county treasurer as a part of the same transaction received the trust certificates representing two-fifths of the final dividend.

When these transactions are viewed together as part of a general plan to close the receivership and permit the remaining assets to be

administered by the depositors' committee we find that they are entirely consistent with the resolution passed by the county commissioners to which the defendants agreed.

After the supplementary trial, the trial court reached the same conclusion that we have outlined above. The transactions though somewhat involved did not operate as a payment to the county of the final 10% of the county deposits. Neither did they operate to extinguish the liability of the defendants on the surety bonds nor constitute a release thereof.

The defendants would seek refuge in the rule that sureties are favorites of the law and are entitled to have the contract upon which their liability rests strictly construed. This rule is generally applied to uncompensated sureties. In this case we are dealing with public funds. The sureties, while not directly compensated, had a definite interest in the defunct bank. One of the sureties was president and the other, cashier of that institution. Under those circumstances the rule that the obligation of a surety is to be strictly construed may not be invoked. Holmes v. Elder, 170 Tenn 257, 94 SW (2d) 390, 104 ALR 1282; National Surety Co. v. Campbell, 108 Wash 596, 185 P 602.

The record discloses that included in the amount claimed due by the plaintiff upon the depository bonds in question are certain deposits made by the treasurer of Hettinger county as custodian of various political subdivisions of the county. These deposits are represented by receiver's receipts issued to the following subdivisions:

Highland Township .......................... $   664.66
Beery Township ............................. 1,196.11
Mott School District No. 6, Sinking Fund.......... 11,455.19
Prairie Home School District No. 23, Sinking Fund.. 1,555.29

It is contended that these funds are not covered by the bonds in question. The defendants objected to the introduction of evidence concerning these deposits upon the grounds that they did not represent funds of the county but were funds of the respective subdivisions and were deposited by the county treasurer as statutory custodian of the funds for and in behalf of the subdivisions.

The depository bonds upon which this action is brought run in favor of the county of Hettinger as obligee.

"The conditions of this obligation are such that, whereas, the said First National Bank has been designated as a depositary in which may be deposited funds of said obligee, pursuant to the provisions of law.

"Now therefore, if the said The First National Bank shall well and truly account for and pay over to the said obligee, or to its order, on demand, all funds so deposited in it with interest, and agreeably to the terms under which such deposits are made, and shall well and truly perform all duties, obligations and conditions imposed by law on its part to be kept and performed, then, and in that event, this obligation to be void otherwise to be and remain in full force and effect."

Chapter 202, Session Laws ND 1931 provides that: "The county treasurer shall hereafter be custodian of all sinking funds levied by all taxing districts within the county. . . ."

It further provides that: "It shall be the duty of the county treasurer to keep the sinking funds of each taxing district on deposit in such public depository as may have furnished proper bond therefor and as may have been designated by the governing board of the taxing district, and, when so deposited in such duly qualified public depository, the County Treasurer shall be relieved of personal responsibility for their safekeeping."

It will be noted from the foregoing statute that the funds in question are the property of the subdivisions although in the custody of the county treasurer. The county is not made responsible for their safekeeping in any way. The county does not designate the depository. The designation is made by the respective governing boards of the taxing districts and the treasurer is relieved of personal responsibility if he makes the deposits in accordance with the statute. The depository bonds upon which recovery is sought run to Hettinger County. They do not purport to cover obligations of the principal to pay other funds than those which belong to the county. "A surety cannot be held beyond the express terms of his contract. . . ." Section 6677, N. D. Comp. Laws 1913. We cannot read into these bonds obligations for which they do not provide. We must uphold the defendants' contention that they are not liable in this action for deposits made by the county treasurer as custodian of funds belonging to the political subdivisions of Hettinger county.

The remaining point to be considered involves interest. Several of the county's deposits were represented by certificates of deposit bearing interest at $2\frac{1}{2}\%$. The bank closed March 4, 1933. Demand for payment was served upon the sureties on November 5, 1937. The county contends that it is entitled to interest upon the sums represented by the certificates of deposit at $2\frac{1}{2}\%$ per annum from March 4, 1933 and upon the amount due on the balance of the general deposits from the date of demand at the legal rate of $4\%$.

The county waived all interest on its deposits on and after March 4, 1933 by a written instrument executed by the county and consented to in writing by the sureties on March 18, 1935. This instrument was filed with the receiver and in accordance therewith no interest after the closing of the bank was allowed in connection with the dividends paid. The county contends that the consent of the sureties to the waiver agreement makes them liable for interest upon the certificates of deposit from the date the bank closed. This instrument has no effect upon the interest that the county may now collect from the sureties. As a general rule the release of the principal debtor releases the sureties. We have held that in this case the rule does not apply to the deposits of the money belonging to the county because the sureties consented to the adoption of the plan of settlement outlined in the resolution passed by the board of county commissioners. In order to determine the liability of the sureties for interest we must again refer to this resolution. It provides for the issuance of trust certificates to bear interest at the rate of $3\%$ per annum. These certificates were accepted by the county. The resolution provides that it shall not release the sureties for the remainder of such deposits. By remainder is undoubtedly meant that portion of the final dividend that did not go into the county treasury but was deposited to the account of the depositors' committee when the final dividend checks were cashed by the county treasurer. This amount is the same as that shown on the face of the trust certificates issued to the county. These certificates bear interest at $3\%$ per annum as provided for in the resolution. This rate is different from either the statutory legal rate ($4\%$) or the rate specified in the certificates of deposit ($2\frac{1}{2}\%$). The resolution reserved to the county the right to call upon the sureties to pay "the remainder

of such deposits" but said nothing about interest thereon. It, therefore, appears that the sureties did not agree to pay interest. Their liability does not extend beyond the terms of their agreement. Since this covers only the remainder of the deposits they cannot be held liable for interest prior to demand upon them for payment. They did not agree to substitute the trust certificates for the remainder of the deposits as a basis of liability. They are still sureties for that portion of the deposits that has not been paid into the county treasury. They are not guarantors of the trust certificates.

We hold that under the resolution of the board of county commissioners and the execution of the plan contemplated thereby the sureties were not liable for interest until demand was made upon them for payment. This demand was made November 5, 1937. The sureties are liable for interest thereafter at the legal rate of 4%.

After careful examination of the testimony taken at the two trials and the many exhibits introduced in evidence we have reached the conclusion that the sureties were not released from liability on the depository bonds for the remainder of the deposits of Hettinger county; that these bonds covered only deposits of money belonging to the county; that the amount of deposits remaining unpaid is the sum shown by the trust certificates issued by the depositors' committee and that the sureties are liable for interest upon this amount at the rate of 4% per annum from November 5, 1937.

The judgment dismissing the action is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

Burr, Ch. J., and Burke, Nuessle, and Christianson, JJ., concur.

Morris, J. (on petition for rehearing). The defendants have filed a petition for rehearing in which they strenuously contend that the facts as found by the trial court and approved by this court clearly show that the arrangement whereby the county of Hettinger accepted trust certificates issued by the depositors' committee resulted in a novation under the provisions of ¶ 2, § 5830, N. D. Comp. Laws 1913, and that the sureties are thereby released. It is asserted that a new debtor

was substituted in place of the old one with intent to release the latter. They cite the case of Oakland County v. Allen, 295 Mich 61, 294 NW 98. In that case Oakland county held certificates of deposit in the Birmingham Savings Bank. The defendants were sureties for these deposits. The First National Bank assumed the liability of the Birmingham Savings Bank. Thereafter the county transacted business with the First National Bank, surrendered to it the Birmingham Savings Bank certificates and accepted in lieu thereof certificates of the First National Bank which were not in the same form and which bore a greater rate of interest. The First National Bank closed and the county filed a claim against the receiver for the money formerly in the Birmingham Savings Bank and accepted dividends thereon. The county also brought an action to recover on the depository bond of the Birmingham Savings Bank. The trial court determined that the county had no cause of action on the bond. This decision was affirmed on appeal by an equally divided court. The prevailing opinion holds that the conduct of the parties including the county constituted a novation and the sureties were released under the general rule that the novation of a contract, the performance of which is guaranteed by a surety, will discharge the surety from his obligation.

The facts in the case cited by the defendants differ materially from those before us. In the Michigan case it does not appear that the sureties on the depository bond of the Birmingham Savings Bank were parties to the arrangement whereby Oakland county accepted certificates of deposit of the First National Bank while in the case before us the sureties consented to and participated in the arrangement whereby trust certificates were issued to the county for the balance of the unpaid deposits in the defunct bank. The sureties gave their written consent to a resolution of the board of county commissioners outlining the plan which the sureties now claim resulted in a novation. They specifically agreed that they should not be released from liability. Furthermore, they participated in carrying out the plan in the manner outlined in the main opinion. Such consent and participation now bars them from claiming release from liability on the ground of novation. Rehearing denied.

BURR, Ch. J., and NUESSLE, BURKE, and CHRISTIANSON, JJ., concur.